# PENN GAS COAL CO. v. VERSAILLES FUEL GAS CO.
# WEST'D COAL CO. v. VERSAILLES FUEL GAS CO.

APPEALS BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF WESTMORELAND COUNTY, IN EQUITY.

Argued January 31, 1890—Decided March 10, 1890
[To be reported.]

1. While a release from the owner of surface land, exempting the owners
of underlying minerals and their estates from the obligation of surface
support, will be binding upon all persons subsequently taking title from
the releasors, the state, or its grantee, entering upon the surface under
the power of eminent domain, will not be bound or restricted thereby.

2. Such an entry upon the surface is an entry upon and an appropriation
of the subjacent strata, so far as they are necessary to support the sur-
face for the purposes of the highway or other structure to be built
thereon, notwithstanding the underlying minerals may previously have
been severed in their ownership from the surface, and released from
the servitude of surface support.

3. Wherefore, an owner of coal in situ, to whom the surface owner has
granted the right to remove the whole of it, without liability for any
resulting subsidence of the surface, is entitled to an injunction restrain-
ing a corporation from entering upon the overlying surface to construct
a pipe line, until payment or security for compensation for the easement
of support, acquired as matter of law by such entry.

4. Such corporation may, however, agree to be bound by the release
granted by the owner of the surface, and to accept the risk of subsidence
which such release involves, excluding from its appropriation the coal
underlying its line, and upon the filing of a stipulation to this effect, a
prayer by the owner of the coal for an injunction against its entry upon
the surface will be refused.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

Nos. 20, 21 October Term 1890, Sup. Ct.; * court below,
numbers and term not given.

On November 18, 1889, the Penn Gas Coal Company filed

---

* These cases were transferred to the Eastern District, and argued by
advancement.

its bill in equity against the Versailles Fuel Gas Company in substance averring:

That the plaintiff was the owner in fee of the coal underlying certain tracts of land in Westmoreland county; that the acquisition of its title to the coal was accompanied with the privilege to make drains on the surface and air holes, and from time to time to change the drains and air holes, or either of them, as the convenience of mining might require, together with all mining privileges, on the surface or under it, necessary to the removal of the coal, and without responsibility for damages for the sinking or falling in of the surface by reason of the removal of the coal; that the defendant proposed to enter upon and occupy said tracts of land for the purpose of constructing and operating a pipe line for the transportation of natural gas, in the exercise of the power of eminent domain alleged to have been conferred upon it by the act of May 29, 1885, P. L. 29, and threatened so to enter and occupy without tendering to the plaintiff a bond securing the payment of the damages to the plaintiff's underlying coal; that the defendant had not taken any steps to obtain a decree from the Court of Common Pleas of Westmoreland county defining the precautions which should be taken in laying its pipes, but was proceeding to construct its pipe line in a manner prejudicial to the rights of the plaintiff, and dangerous to those of the community, because it was laying its pipes at the depth of about two feet below the surface, and there was imminent risk that in mining the coal in the usual and customary manner, and in accordance with the plaintiff's mining rights, the surface whereon the pipe is laid would sink or fall in, and should this occur damage of the gravest character by the breaking or disjointing of the pipes and the escape of explosive gas therefrom into the mine, would inevitably ensue; that the risk of this sinking of the surface could not be avoided without to a large extent abandoning the ordinary and customary development of the plaintiff's mine and leaving large bodies of coal in place; that the pipes proposed to be laid were cast-iron pipes, which were not so durable as wrought-iron pipes, and the danger aforesaid might be measurably avoided if the defendant would use pipes of wrought-iron, elevating them above the ground, or inclosing them in adequately strong boxes, open at the top.

Statement of Facts.

The bill prayed for an injunction restraining the defendant from entering upon and occupying any portion of the surface of said tracts until the filing and approval of an adequate bond to the plaintiff, securing the payment to it of compensation, and until the defendant should take such precautions, in regard to the erection and construction of its pipe line, as might be prescribed by the court; for a decree declaring what method of construction should be followed by the defendant with reference to safety and a due regard to the rights of the plaintiff; and for general relief.

The Westmoreland Coal Company also filed a bill against the same defendant, averring ownership in the plaintiff to the coal underlying certain other tracts of land in said county, with mining rights therein substantially identical with those specified in the bill of the Penn Gas Coal Company, and making substantially the same charges against the defendant and the same prayers for relief.

Upon the allegations contained in their bills the plaintiffs moved the court for preliminary injunctions. The motions in the two cases were heard together. Upon the hearing, the plaintiffs presented a number of affidavits tending to prove that the allegations of their bills were true; that the line which the defendant proposed to lay would in some places pass over workings in the mines of the plaintiffs, and in other places would pass over or through the crop line of the plaintiffs' coals; that large portions of it, to be laid over coal yet unworked, would not be far enough above the level of the coal to avoid danger to the mines in case of a subsidence of the surface; that in at least one instance an accident had occurred in a mine by the explosion of gas escaping from a pipe line laid below the surface of the land, and that to make this line safe it should be laid upon the surface. The plaintiffs put in evidence also, an exemplification of certain proceedings in the Court of Common Pleas No. 1 of Allegheny county, wherein the owners of a mine in that county, on complaint of the mine inspectors, were restrained from operating it until certain changes were made in a pipe line laid thereon by the Chartiers Valley Gas Company.

The defendant company presented at the hearing specifications which set forth minutely the manner in which it proposed

to lay the portions of its line passing over the coal properties of the plaintiffs, and the precautions it proposed to take to guard against accidents. An extract therefrom was appended to and made a part of the decree of the court below, infra. The defendant further presented affidavits tending to prove that its line, as it was designed to be laid, would be reasonably safe and free from danger.

The court, HUNTER, P. J., after argument, filed the following opinion and decree:

These cases came on to be heard while we had on hand a heavy criminal calendar, and we have not had time to give the questions raised that thorough research that their importance demands, nor have we time now to hand down or prepare an exhaustive opinion, while the nature of the case and the direction of the act of 1885 requires that "a decree be made with all convenient speed and promptness."

The facts all appear of record, and we need not, therefore, now repeat them.

If the surface land be servient to the coal land, it is only because of a contract by which the latter procured its mining rights, and are relieved from damages to the surface in mining and taking away the coal. In the absence of such contract, the owners of the coal would be answerable to the owners of the surface for any injury thereto or trespass committed thereon in taking out the coal, and thus the coal land would be, in a sense, servient to the surface land. It is not a case where, owing to the natural location of the premises, the common and ordinary use and occupation of the one, necessarily makes another tenement servient.

The defendant company is clothed with the right of eminent domain by virtue of its charter and the law that gave it birth, and has the right to enter and lay its pipes on the lands of others, subject, however, to the provisions of § 8, article XVI., of the constitution, and must make compensation for property " taken, injured, or destroyed " in the construction of its works. These words have received a judicial construction by our Supreme Court in the case of Penna. R. Co. v. Marchant, 119 Pa. 541. Let me quote from the syllabus: " The remedy provided by said constitutional provision, to secure just compensation by

corporations for property injured or destroyed, has relation to injuries which, though popularly termed consequential, are yet to be understood as confined to such injuries to one's property as are actual, positive, and visible, the natural and necessary results of the original construction or enlargement of its works by a corporation, and, of such certain character, that compensation therefor may be ascertained at the time the works are being constructed or enlarged, and paid or secured, as provided in the constitution, in advance." The opinion in this case is exceedingly exhaustive, but fully bears out the syllabus we have quoted.

Now then, taking these bills and ex parte affidavits, it is impossible for us to say what, if any, the damage might be to the plaintiff's coal mines, or that they are actual, positive, and visible, and the necessary results of the original construction of the defendant's works. Nor do I think that the cases shown by the exemplification of the records of the courts of Allegheny county would establish this fact; nor do they establish the rights of these plaintiffs under the constitution as contended for.

The coal companies there were restrained at the instances of the mine inspector from taking out the coal and endangering the mines from breaking of pipes and leakage of the gas, until the gas pipes were constructed in a different or sufficient manner, but of this further on. While the bills in both cases here are precisely similar, yet they both aver an easement in the surface, namely, the right to enter thereon in the exercise of their mining rights, privileges to make drains with air holes, etc., and this averment is not denied. So then, while we cannot hold that the defendant company is compelled to give a bond for going over the surface which does not belong to the plaintiffs, we have power to direct how or in what manner the pipes are to be laid over land in which there is an easement, under the twelfth section of the act of May 20, 1885, where any dispute arises; and that there is a dispute here, these bills and affidavits and the contention of he parties as to their respective rights clearly aver. And this question is independent of any constitutional provision, because it is in defendant company's charter privileges and obligations. And here we may remark that this statute would seem to be precautionary only, and, although it does give the court restraining power, yet we think that the well-known principle

of equity, that only in clear cases an injunction will be granted, does not for the reason given apply; at least, we shall give the statute a more liberal construction and determine the question from the weight of the proofs offered at the hearing.

Turning to the Chartiers Valley Gas Company cases, where there was a restraining order against the coal companies, as shown by the records brought here from Allegheny county, we are not informed as to whether the pipes had been laid as they are here about to be laid, if the specifications are followed. It is true that the pipes there were afterwards laid above the surface, but is this the only safe way? At the hearing in these cases, the defendant company offered its specifications, and the fair presumption is that the intention is to have the pipes laid in the manner specified therein; and the weight of the proofs offered at the hearing convinces us that if the pipes be laid in the manner as specified on page 3 of the specifications, under the caption of " Cinder and Coal," there will be no danger. We find the words " through coal," quoted, to apply here to cases like the ones before us. These specifications we now direct to be filed with this opinion.

And now, November 25, 1889, upon due consideration thereof, it is ordered, adjudged, and decreed, that the Versailles Fuel Gas Company, the defendant in the afore-named bills in equity, shall lay its gas pipes over the plaintiff companies' coal land, and such surface land as they, or either of them, may own, in the manner prescribed in the Versailles Fuel Gas Company's specifications on page 3, under the caption of " Cinder and Coal," hereunto attached and ordered to be filed; and it is further ordered, adjudged, and decreed that the Versailles Fuel Gas Company, the defendant, its officers, agents, servants, and employees be and they are hereby enjoined from laying their pipes over the premises of the respective plaintiffs aforesaid in any other way.[3]

—Extract from specifications:

## " CINDER AND COAL."

" Where the ditch runs through cinder or coal, the ditch shall be dug twelve inches extra depth and twenty-three inches extra width. Clay shall be tamped in at the bottom of the ditch for twelve inches, and, after the pipe is laid and tested, clay shall be tamped twelve inches wide on each side of the pipe,

and on top of the pipe to the surface of the ground. Where the ditch passes through coal, or close to houses, and at such other places as the engineer may direct, in addition to the clay a broken-stone escape system, consisting of six inches of broken stone on top of the pipes, a layer of tar paper, and escape posts every one hundred feet shall be put in."

Thereupon the plaintiffs took these appeals, assigning for error:

2. The refusal of the plaintiffs' motions for preliminary injunctions.

3. The decree of November 25, 1889.[3]

*Mr. M. Hampton Todd* and *Mr. George Tucker Bispham* (with them *Mr. J. A. Marchand* and *Mr. P. H. Gaither*), for the appellants:

1. The plaintiffs were entitled to injunctions restraining the defendant from entering upon the tracts of land mentioned in the bills, unless and until adequate bonds for damages should first be tendered and approved: Sterling's App., 111 Pa. 35. Entering upon those tracts by virtue of the state's right of eminent domain, the defendant takes not only a portion of the surface, but also subjacent support thereof, the result of which will be that the plaintiff will have to leave in place the coal underlying the surface occupied by the pipe line, and will be deprived of the mining rights purchased by them. There is a manifest distinction between entering under the powers of the state, and entering under a grant from the surface owner. When she takes for a public purpose, the state takes everything necessary for that purpose, without regard to the several ownerships, easements, servitudes, terms or estates that may exist, and is unaffected by any contracts between the owners of the surface and of the minerals underneath.

2. Whenever the courts in this country have had occasion to consider the extent vertically of a railway company's taking, it has been held that it takes the right of support, and that, independent of any question of severance of title as to the surface and minerals: Searle v. Railroad Co., 33 Pa. 57 ; Phila. etc. R. Co. v. Lawrence, 10 Phila. 606 ; Lawrence's App., 78 Pa. 365. The cases in England are in the same vein: Cale-

donia Ry. Co. v. Sprot, 2 Macq., H. of L. Cas., 449; Midland Ry. Co. v. Checkey, L. R. 4 Eq. Cas. 19. The English courts rule that a taking by eminent domain is the same as a compulsory contract of sale, without terms; and in a sale without any terms being named as to right of support, that right is implied, as the cases in Pennsylvania fully establish: Jones v. Wagner, 66 Pa. 429; Horner v. Watson, 79 Pa. 242; Coleman v. Chadwick, 80 Pa. 81; Scheaffer's App., 100 Pa. 379; Carlin v. Chappel, 101 Pa. 348; Williams v. Hay, 120 Pa. 485. This implied right, in the case of a railroad, is recognized in the next books: Mills on Em. Domain, § 52. The right of lateral support is implied also: Northeastern R. Co. v. Elliot, 30 Law Journal 180.

3. No matter how many estates or interests may exist in the land affected by the appropriation of a right of way, the owners of all are entitled to compensation and protection: Phila. etc. R. Co. v. Williams, 54 Pa. 103; Brown v. Powell, 25 Pa. 229; North Penna. R. Co. v. Davis, 26 Pa. 238; Turnpike Road v. Brosi, 22 Pa. 32. For the measure of damages for coal obliged to be left in place to support a public work, see Searle v. Railroad Co., 33 Pa. 64; Reading etc. R. Co. v. Balthaser, 119 Pa. 472. If the defendant should acquire title to its right of way, not by eminent domain but by purchase from the surface owners, as the use of it for the purpose proposed will impose upon the plaintiffs a new burden, viz., the duty, for their own protection, of furnishing a support to the surface which formerly they did not owe, and will, without right, subject their properties to a dangerous servitude, it should be restrained. In addition to their right to mine out all the coal, the plaintiffs have certain rights to be exercised on the surface. That the interference by the defendant with their exercise is a taking of property for the purposes of its pipe line, is self evident.

4. Entirely distinct from and independent of the propositions considered so far, is our remaining proposition, viz., that the plaintiffs were entitled to injunctions restraining the defendant from constructing its pipe line until proper precautions are taken to prevent its becoming a public and private nuisance. While under Penna. R. Co. v. Lippincott, 116 Pa. 472, and Penna. R. Co. v. Marchant, 119 Pa. 541, the defendant would not be responsible for a depreciation resulting from the lawful

exercise of its powers, those cases do not apply when the powers of the company are exercised in an unreasonable, improper or negligent manner: Pittsburgh etc. Ry. Co. v. Gilleland, 56 Pa. 445. The right to enter on the surface, if it exists at all, is therefore no justification for constructing the pipe line in a manner unnecessarily dangerous to the property rights of the plaintiffs. The only safe way is to lay the pipe on the surface or in an exposed trough, and the plan sanctioned by the court really detracts from the safety, as it would prevent the escape of the gas upwards in the event of a break.

*Mr. James S. Moorhead* (with him *Mr. James H. Reed, Mr. P. C. Knox* and *Mr. John B. Head*), for the appellee:

1. There is nothing in the relations of the owners of these separate estates, coal and surface, that enables the owner of the coal to restrain the owner of the surface from placing thereon any structure he pleases, if he takes, as he must, the risk of its destruction by the mining out of the coal. The defendant does not deny the right of the plaintiffs to remove the coal entirely, without liability for damages, and is not seeking to appropriate any part thereof to its use, but assumes that it places its pipe line on the surface subject to all the risks of the removal of the entire body of coal, and of the subsidence of the surface. Lawrence's App., 78 Pa. 365, cited by the plaintiffs, was decided distinctly on the ground that the owner of the coal had acquired title after the appropriation by the railroad company. In the other cases cited, both surface and minerals were owned by the same person. The reason that applies in such cases does not apply when the title to the two is severed. The entire independence of estates in coal and in surface has been recognized repeatedly: Logan v. Washington Co., 29 Pa. 373; Caldwell v. Fulton, 31 Pa. 483; Turner v. Reynolds, 23 Pa. 199.

2. There may be such complete severance that the owner of the subjacent coal owes the owner of the soil no duty of support: Caldwell v. Copeland, 37 Pa. 427; Armstrong v. Caldwell, 53 Pa. 284; Scranton v. Phillips, 94 Pa. 15. When such severance has taken place, could a railroad company that has purchased or condemned a right of way on the surface, without compensating the owner of the coal and without notice to

him, enjoin him from mining? The whole question, in the present case, is whether the defendant can be compelled to take and pay for a thing it insists it does not need and does not want. So far as the surface rights of the plaintiffs are concerned, it is not averred or pretended that the defendant has invaded any portion of the surface where their easements are in actual use, or any portions thereof that will be essential to their use hereafter. The exercise of those rights must be a reasonable one, and must not unnecessarily interfere with other uses of the surface: Stevenson v. Stewart, 7 Phila. 293; Connery v. Brooke, 73 Pa. 80; Ohio Oil Co. v. Railroad Co., 22 Ohio L. J. 210. If the ground we have taken is proportionately insignificant in quantity, and no special necessity for its use by the plaintiffs is shown, equity should not interfere.

3. With regard to the second ground upon which the plaintiffs complain, § 12, act of May 29, 1885, P. L. 29, furnishes a complete and adequate remedy, and the court below has acted thereunder, prescribing the duties of the defendant as to precautions for the safety of persons and property. In condemning the method prescribed by the court, the counsel do not allude to the system of escape pipes and broken stone placed on top of the pipes along the entire line. And in asking that the line be laid on the surface, or in an exposed trough, they forget that this would be in violation of the statute, which requires the burying of the pipe, and that to lay it as they desire is beyond the power of the gas company. The appeal given by § 12 of the act of 1885, from the decree directing the manner of laying the line, is not a supersedeas. In the present case, the defendant has constructed its line in accordance with the directions of the court, and we think it would be unjust, on the showing made by the plaintiffs, to require the undoing of this work and the adoption of a new system before the one selected is given a fair trial, especially as further proceedings may be had at any time in the future.

OPINION, MR. JUSTICE WILLIAMS:

The coal companies are the owners of the coal under a large body of land in Westmoreland county, the surface of which belongs to others. In granting the coal, the owners of the land released their right to the support of the surface, so that the

coal companies have the right to remove all the coal without regard to the effect of such removal on the surface. The gas company desires to lay its main line for the transportation of natural gas or fuel upon and across these lands. The transportation of natural gas has been declared a public use and the right of eminent domain conferred upon companies organized for the purpose of providing transportation for it, by the act of May 29, 1885. The gas company appears to have entered lawfully upon the surface for the purpose of laying its line of pipe, and to have proceeded on the theory that the owners of the underlying estates in the coal were not injured by their entry upon the surface, and had no right to be heard. The learned judge who heard the case adopted this view, and held that the gas company could not be required to give bonds to the coal companies for going over the surface which did not belong to them, but nevertheless sustained the plaintiffs' bills, and made a decree regulating the manner in which the pipes should be laid on the surface, so as to guard against injury to the underlying coal, as well as it was practicable to do. Just how these positions are reconcilable, it might be difficult to see. Our present inquiry relates to the first of them.

If an entry had been made on these lands under the right of eminent domain before the coal had been separated from the surface by sale, the corporation making such entry would have acquired a right both to the surface and to the support of the surface by the underlying coal, or so much thereof as would be needed for that purpose. The loss in value to the tract by reason of the appropriation of part of the coal to the support of the surface is a proper subject for compensation by the viewers appointed to assess damages: Searle v. Railroad Co., 33 Pa. 57; Reading etc. R. Co. v. Balthaser, 119 Pa. 472. This is to be ascertained, not by a calculation of the quantity of the coal, but by the effect of the appropriation on the tract as a whole. The railroad company, as was said by LOWRIE, C. J., "gets no title to the coal further than it is needed to support the surface," but they did acquire, beyond all question, the right to such support, without which the right to the surface would have possessed but little value. It was, so to speak, appurtenant to the surface, and was acquired with it.

What is the effect of the severance of the coal from the sur-

face? If the sale of the coal be made in the usual manner, the purchaser takes it subject to the burden of surface support, and cannot remove it without leaving a sufficient quantity to support the surface: Jones v. Wagner, 66 Pa. 429; Carlin v. Chappel, 101 Pa. 348. An entry in that case upon the surface has the same effect as though made before the sale of the coal, and the right to surface support residing in the owner of the surface passes to the corporation when it appropriates the surface. If, in addition to severing the coal from the surface by a sale, the owner releases his vendee and the underlying estate from the obligation of surface support, the release is binding upon him and those taking title from him, but it cannot bind the state, or its grantee, entering by virtue of the title paramount residing in the sovereign. The right of eminent domain cannot be abridged or defeated by the contracts between private owners, or by the release of the owner of the surface. An entry by the state upon the surface is an entry upon the subjacent strata so far as they are necessary to support the surface for the purposes of the canal, railroad, pipe line, or other structure to be built thereon. If the corporation making the entry has no knowledge that the right of support has been released, or if it fails for any reason to tender a bond to the owner of the coal, the remedy of the owner is by bill to restrain, or by a proceeding to obtain an assessment of the damages sustained. If the latter mode be adopted, the amount of support needed, the probable length of time the structure may remain in place, the possible danger from its use, are elements that enter into the calculation of the damages to the extent that they may affect the market value of the underlying estate, but not otherwise. If the proceeding by bill be chosen, we see no reason why the owner of the subjacent stratum has not a right to require security to be given, before the appropriation of his coal to the support of the surface is made by the corporation entering upon the surface for the construction of its railroad, canal, or other line of transportation.

As we have already said, the character of the structure to be put upon the surface, the use to which it is devoted, the depth below the surface at which the vein of coal is found, and the regularity of the geological formation, are circumstances to be taken into account in determining the amount of support

Opinion of the Court.

needed and of the compensation to which the coal owner is entitled. If the corporation feels that its works are of such a character, or of so temporary a nature, or for the transportation of a commodity so soon to be exhausted, as to render appropriation of the underlying estate to the support of the surface unnecessary, it may file a stipulation agreeing to be bound by the release of the owner of the surface, and to accept the risk of subsidence which such release involves. If it does not do this, support is acquired as matter of law by an entry under the right of eminent domain, and is a proper subject for compensation, not by estimating the value of the coal in place that may be needed for support, but by the effect of the appropriation on the price or value of the underlying estate.

Upon the other question, that of the precautions necessary to be taken in laying the pipe so as to secure the coal owners from danger, the order made would seem, for the present at least, a sufficient protection. If it shall hereafter appear inadequate, there is no reason to doubt that such further order will be made as may then seem necessary. The only error of the court below was in holding that the owners of the coal had no standing, and no right to be heard on the question of compensation, because the pipe was not laid on their estates, but on the surface which was owned by others. The court should have granted the injunction prayed for, unless the corporation joined in, or agreed to be bound by the release of support by the owners of the surface, or gave security, as required by law, for the payment of the damages to be assessed for such support. The decree is reversed, so far as relates to this subject, and the learned judge is directed to proceed to a disposition of the motion for a preliminary injunction upon the principles now laid down; refusing it, if either security or a release be given, and granting it, if both be withheld.

The rule of this court is not to file an opinion in cases relating to preliminary injunctions. These cases are made an exception because the question involved is new, and because it has seemed probable that an expression of our views at this time might simplify, if it did not wholly save future litigation in them.