# Davis, Appellant, *v.* Jefferson Gas Co.

*Eminent domain—Pipe lines—Subjacent support.*

Corporations appropriating land under the right of eminent domain, for an easement of way for a pipe line for the transportation of natural gas, may insist on the right of subjacent support from underlying coal strata, with all its incidents; and it matters not whether the surface and the underlying coal are owned by the same or by different persons.

*Damages—Value of tract as a whole.*

This right, in its effect upon the tract over which it is exercised, is an element for consideration, in proper cases, in the ascertainment of compensation to the coal owner; not, however, by estimating the value of the coal supposed to be necessary to remain to afford that support, but by considering the extent to which the value of the tract as a whole is affected.

*Circumstances considered in estimating damages.*

The character of the soil in which the line is laid, the depth of the line from the surface, its proximity to the underlying coal, the danger of surface subsidence when the coal is removed, the probable breaking of the line and the danger of gas escaping into the mine, may also be taken into consideration, in proper cases, as affecting the general market value of the tract.

*Release—Estoppel—Risk of injury to mine.*

Though a release by the corporation of its right to damages for injury

to its lines by the removal of the underlying coal, may operate as an es-
toppel against a claim by the corporation for such damages, yet such re-
lease will be ineffective as against the coal owner's right to compensation
for the risk of injuries to the mine in the operation of the pipe line : Per
Mr. Justice STERRETT.

Argued Oct. 28, 1890. Reargued Nov. 10, 1891. Appeal,
No. 54, Oct. T., 1890, by plaintiff, from judgment of C. P.
No. 1, Allegheny Co., June T., 1889, No. 152, on verdict for
plaintiff. Before PAXSON, C. J., STERRETT, GREEN, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ., on the argument. Be-
fore PAXSON, C. J., STERRETT, GREEN, WILLIAMS ᵥ and
MITCHELL, JJ., on the reargument.

On May 18, 1889, an appeal was entered by the Jefferson
Gas Company from the report of viewers appointed to deter-
mine the damages caused to the land of Mary Davis, by the
laying of said company's pipe line thereon, for the transportation
of natural gas. Subsequently, an issue was formed wherein the
said Mary Davis was plaintiff and the gas company defendant.

At the trial on February 12, 1890, F. O. Wolf was called
and examined as a witness for the plaintiff :

" Q. Do you know the depth about which this pipe line is
laid in the ground ? " Objected to.

Plaintiff's counsel : " The purpose is to show the effect on
the land through which it runs."

By the Court : " I will not let it go in, if the purpose is to
show its approximation to the coal vein, to show the danger,
when the mine is opened, of the gas escaping and getting into
the coal mine; and I exclude it all."

Plaintiff's counsel then proposed to prove the " character of
the soil through which defendant's line runs, the depth of the
line below the surface of the ground, the proximity of defend-
ant's line to the surface of the underlying coal, the danger of
the surface falling in when the coal is removed, the probable
breaking of defendant's pipes, the danger of gas escaping into
plaintiff's mine ; and that, for the purpose of showing the gen-
eral depreciation in the market value of the plaintiff's prop-
erty." Objected to as incompetent and irrevelant.

By the Court : " You can show all excepting the danger to
the coal from the escaping gas." Exception. [4]

It was then shown that the depth of the pipe line from the

surface was about three feet, the average distance from the pipe line to the surface of the underlying coal was about thirty to thirty-five feet, some places more, some places less, and where the coal cropped out, it was nothing; that if the coal should be taken out, it would have the effect of making the ground slip more, because it was a hill-side. Other testimony made it appear that the plaintiff's farm contained about eight acres, and was underlaid with coal, all but about five acres having been mined out. Both surface and coal were owned by the plaintiff. The gas company had appropriated a strip of the surface seven hundred and ten feet long and ten feet wide. Testimony was offered and admitted showing the quantity of coal necessary to be left unmined, to afford proper support to the defendant's appropriation.

At the close of the testimony, the court, STOWE, P. J., having read the points presented, charged the jury in part as follows:

Answering these points is a good deal like what Judge Mc-Clure called shooting on the wing; but I will answer them so they will go on the record, and whether they are right is a matter for serious consideration. My ideas as to the principles governing the case are very distinct, and I will explain them in a general charge, and then answer the points. . . .

In this case, the great question is the amount of damages done. This pipe line runs across the property of the plaintiff. Of course, it does him damage, because it takes a certain amount of his property, a strip of some seven hundred and ten feet in length, by ten feet in width. . . . While the use may not be and is not exclusive, yet it is such an interference with right of the owner of the property that it substantially takes away from him the value of it; and the first question is how much is that land worth?

It is not worth very much in this case, because it is on a hill-side. It cannot be cultivated; has not been, at least, and the probabilities are, it cannot be. However, that is for the jury. But, whatever the value of that property is, taking it as the company did take it, the plaintiff should have damages for. That has been put down and is uncontroverted on the other side, at the rate of fifty cents a rod. It is a very small figure, but if that is all it is worth, the plaintiff is entitled to

no more so far as that is concerned; and that is all the damage I can see is done, except the apprehension of the land sliding, being cut by this pipe line and thus causing slips.

There is no evidence that there have been any slips. There was one slip, but it is very evident, according to the testimony, it was not occasioned by the cutting of the hill-side; and the fact is, so far as the ground above the pipe line is concerned, that the pipe line being put there, passing out at each end like a twelve inch iron chain or cable run through the ground, would rather have a tendency, it strikes me, to support the hill-side, and it would operate as a barrier to that extent. Of course, the tendency to slip might be increased if water should get in and soften the ground; the hill would naturally slide away. Whatever effect this may have on the value of the balance of the land, so far as it would indicate or cause a tendency to slip, is to be considered by the jury. If you consider it worth while to think that the danger involves or affects the market value of the ground, to that extent you have a right and ought to give damages. It is for you to consider, however, whether there is any evidence tending to justify any such conclusion. If there has been none yet, this ground, every year it stands there, will become more and more solid. It has been a peculiarly soft year; and if there has not been any slip up to this time, there may not ever be, and yet there may be. That is a matter not of law, but a matter for the consideration of the jury. Whatever bearing it may have on the value of the property is to be considered, and if the jury think it affects the value of the property, they ought to allow damages to that extent.

[Now, we come to the great point in controversy in this case; and that is, the effect the pipe line has on the coal, because that is where the damage is. There is no damage done to this coal particularly, except where it crops out, wherever the line cuts through the crop of the coal. If that would be of any value at all to the extent that it is cut in, three or four feet, I presume the out-croppage three or four feet deep along the edge would not amount to very much. For that the plaintiff ought to have damages. But, when you get farther in, where the pipe line itself would not interfere with the working of this coal, another matter is presented; and there we take

the broad ground that, except where the pipe line itself actually takes, or substantially interferes with the taking of this coal, no damage has been done at all to the plaintiff. This pipe line being built there, does not affect his right to mine the coal. He has a right to go and take it out whenever he pleases; and, as I apprehend, he is not bound to do more than give the other party notice that he is going to remove the support, and if they choose to support it, they can do it, and any damage incidental or consequent to the possibility of this pipe line exploding, or the possibility that it may break down hereafter, or any other consequence separate from the direct prevention from taking this coal, by putting it in such shape it cannot be taken out with the pipe line there, is no standard of damage in this case. The coal is there just as it was before, and the right of the plaintiff to take it out, I apprehend, remains unprejudiced, unaffected. Consequently, if in this case we pay him for the use of his coal or for his coal, we are simply paying him for something the defendant can never use and take away, and which the plaintiff can take away when he pleases. In other words, it is making the defendant pay for property belonging to the plaintiff, which the plaintiff to-morrow can go and dig out.]

If there is any other matter about this pipe line which makes it more expensive to mine the coal, it is a subject for damages; but it cannot possibly be any more than to build a house on the top of the ground, or a fence on the top of the ground. [It could not affect the use of the coal. The coal is there, and can be dug out to-day, just as well as if the pipe line were never put there, except where it crops out; therefore, any damage, or evidence tending to show damage arising to the plaintiff from that cause, cannot be considered in this case, and the jury should disregard it, if there is any before them. I have tried to exclude it, but a great deal has gotten in, as always will in cases of this kind, and the jury can only disregard it when they come to consider the case.] . . .

The plaintiff requests the court to charge:

3. That the easement of the defendant company, obtained under the right of eminent domain, carries with it the right of support for its lines; and the owner of the land has no right to remove coal or other minerals under said lines, to their injury or detriment. Answer: Refused. [2]

4. That the right of the plaintiff to use the ground appropriated by defendant company, which in this case is a strip ten feet in width and seven hundred and ten feet in length, is subordinate to the superior right of the Jefferson Gas Co. ; and this superior right to use the ground so appropriated, extends to all the minerals underlying said line, including the coal, the removal of which would endanger the safety of the pipes of defendant company.   Answer : Refused. [3]

The defendant requests the court to charge :

12. That, in estimating the damages to the plaintiff's land, the possibility of damages from the pipe line to the land of [or ?] the coal, and the element of risk and danger to the same from escaping gas, should be left out of consideration, because the law makes provisions whereby the working of coal can be rendered entirely safe.   Answer : Affirmed. [1]

Verdict and judgment for plaintiff for $175.   Plaintiff appealed.

*Errors assigned* were (1) affirmance of defendant's point; (2, 3) refusal of plaintiff's points; (4) refusal of plaintiffs offer ; (5) the parts of the charge of the court as printed and included in brackets but not quoting them.*

*John F. Cox,* for the appellant.—As to the defendant company's right to insist upon surface support, counsel cited : Penn Coal Co. v. Gas Co., 131 Pa. 522.   And, as to the measure of damages resulting from the exercise of such right : Searle v. Railroad Co., 33 Pa. 57 ; Reading etc. R. Co. v. Balthaser, 119 Pa. 472 ; [see s. c. 126 Pa. 1.]

*Mr. John D. McKennan,* for the appellee.—This case was tried before the announcement of the decision of the Supreme Court in Penn Coal Co. v. Gas Co., 131 Pa. 522, and no stipulation releasing the owner of the coal from the duty of supporting the surface, was offered before or during the trial.   If the filing of such stipulation has the effect of eliminating the question of possible danger to the mining of the coal, as an element of damage affecting the market value of the land, the defendant is willing and hereby offers to release the plaintiff from any obligation on her part to support the surface on which th pipe line is laid.

---

* See Rule XXIII of the Rules of the Supreme Court.

And by giving the stipulation this effect, a sensible and safe rule would be made. It would remove wild and speculative guessing, and would prevent great injustice to gas companies. When witnesses are permitted to testify that the market value of land is depreciated because danger might happen to the mining of coal, the gas companies are often compelled to pay for something that may never happen and for something they may never get. If, however, danger should arise or inconvenience happen in the mining of coal, the twelfth section of the act of May 29, 1885, P. L. 34, provides a simple remedy by which the danger can be avoided and the inconvenience remedied. And the gas company can then be compelled to compensate the coal owner for the strip of coal which it might be found necessary to take, or for any other damage or inconvenience suffered by him.

OPINION BY MR. JUSTICE STERRETT, January 4, 1892.

In the exercise of its right of eminent domain, defendant company entered upon plaintiff's land, and appropriated a strip thereof ten feet wide and 710 feet long, running diagonally across a portion of the farm. In that strip, at the depth of about three feet from the surface, defendant's pipe line for the transportation of gas was laid. An appeal having been taken from the award of viewers appointed to assess damages, the issue was tried in due course by a jury, and on their verdict in favor of plaintiff for $175, judgment was entered. From that judgment this appeal was taken.

One of the errors assigned to the rulings of the trial judge is the refusal of plaintiff's offer " to prove the character of the soil through which defendant's pipe line runs, the depth of the line below the surface of the ground, the proximity of defendant's line to the surface of the underlying coal, the danger of the surface falling in when the coal is removed, the probable breaking of defendant's pipes, the danger of gas escaping into plaintiff's mine; and that, for the purpose of showing the general depreciation in the market value of plaintiff's property."

In view of the distinctly stated purpose of the offer, the testimony therein referred to appears to be both competent and relevant. The market value of plaintiff's land, as affected by defendant's entry thereon and specific appropriation of a por-

tion thereof, and also by the use to which the portion thus appropriated was applied, etc., was clearly proper for the consideration of the jury in determining the extent of plaintiff's damages. The market value of the, land, as a whole, was doubtless affected, not merely by the entry and appropriation of the ten-feet wide strip of surface for the purpose of laying therein, maintaining and operating the defendant's pipe line, but also by the necessary and unavoidable consequences of such appropriation and use. The servitude thus fastened upon the land includes, among other things, the right of subjacent support with all its incidents: Penn Coal Co. v. Gas Co., 131 Pa. 522. It was there held that such an entry upon the surface, is an entry upon and appropriation of the subjacent strata, so far as they are necessary to support the surface for the purposes .of the highway, pipe line or other structure to be built thereon. Our brother WILLIAMS, speaking for this court, said:

" If an entry had been made on these lands under the right of eminent domain, before the coal had been separated from the surface by sale, the corporation making such entry would have acquired a right both to the surface and to the support of the surface by the underlying coal, or so much thereof as would be needed for that purpose. The loss in value to the tract by reason of the appropriation of part of the coal to the support of the surface, is a proper subject for compensation by the viewers appointed to assess damages: Searle v. Railroad Co., 33 Pa. 57; Reading R. Co. v. Balthasar, 119 Pa. 472. This is to be ascertained, not by a calculation of the quantity of the coal, but by the effect of the appropriation on the tract as a whole. The railroad company, as was said by LOWRIE, C. J., ' gets no title to the coal further than it is needed to support the surface;' but they did acquire, beyond all question, the right to such support, without which the right to the surface would have possessed but little value. It was, so to speak, appurtenant to the surface, and was acquired with it."

In the case now under consideration there has never been any severance of the coal in place from the land, by conveyance or otherwise. The land and all that is contained therein belongs to the plaintiff. The coal mine, opened ten or twelve years ago, appears to have been worked more or less ever since. The mining has progressed in the direction of the strip appro-

priated by defendant, until, at one or two points, it is quite near the right of way. If plaintiff can show that the servitude imposed on her land does or will, for any of the reasons suggested in the offer, so interfere with the successful mining and taking out the coal underlying the pipe line, or beyond it, that the market value of the land, as a whole, has been materially depreciated, there is no good reason why she should not be permitted to do so. In circumstances such as are alleged to exist in this case it would be difficult, if not impossible, for a jury to arrive at a just conclusion as to the amount of damages that should be awarded, unless they are aided by evidence such as appears to be contemplated by the offer in question. As was said in Penn Coal Co. v. Gas Co., supra.

" The character of the structure to be put upon the surface, the use to which it is devoted, the depth below the surface at which the vein of coal is found, and the regularity of the geological formation, are circumstances to be taken into account in determining the amount of support needed. . . . Support is acquired, as matter of law, by an entry under the right of eminent domain, and is a proper subject for compensation, not by estimating the value of the coal in place that may be needed for support, but by the effect of the appropriation on the price or value of the underlying estate."

In that case, the land was owned by one person, and the coal by another; but that severance in title cannot affect the principle.

On the argument here, it was claimed by defendant company that it can even now release all claim to plaintiff's coal as a means of subjacent support for its pipe line, and accept the risk of subsidence, etc., which may result from the removal of that support; and, on its application, permission was given to file such release. Conceding, for the purpose of argument, that the company has the power to release the right of support which, as locum tenens of the commonwealth, it acquired under the right of eminent domain, and take upon itself the risk of subsidence with all its consequences, what effect has the release on the question of damages? As against its releasee, the company would doubtless be estopped by its release from claiming any damage resulting to it from the removal of the coal; but that would be no compensation to her for the risk

she would encounter from subsidence, breaking of the pipe line, flooding the mine with gas, etc., in case she undertook to mine out the coal. It would be giving a novel effect to the company's release, to hold that it eliminates from the case the element of risk and consequent damage, not only to the company itself, but also to the mine owner, arising from the removal of such support. The constitution recognizes no such mode of making "just compensation for property taken, injured, or destroyed" in the exercise of the right of eminent domain. While the defendant may release its claim to what is properly its own to dispose of, it cannot, by release or otherwise, barter away the rights of others. Neither corporations nor individuals can release that which does not belong to them.

It is unnecessary, at present, to further consider the effect of the release in question. It was not in the case while it was pending in the court below. It was not even tendered until long after the record was brought into this court. If it becomes a factor in the next trial, its effect can then be fully considered.

In one of the points submitted by plaintiff, the learned judge was requested to charge "that the easement of the defendant company, obtained under the right of eminent domain, carries with it the right of support for its lines; and the owner of the land has no right to remove coal or other minerals under said lines, to their injury or detriment." In another point, he was requested to charge "that the right of the plaintiff to use the ground appropriated by defendant company, which, in this case, is a strip ten feet in width, and 710 feet in length, is subordinate to the superior rights of the Jefferson Gas Co.; and this superior right to use the ground so appropriated, extends to all the minerals underlying said line, including the coal, the removal of which would endanger the safety of the pipes of defendant company." As will be seen by reference to the authorities already cited, these propositions are both correct, and should have been affirmed. In the opening sentence of his charge the learned judge says : "Answering these points is a good deal like . . . . shooting on the wing." This may account for these stray shots.

The last specification of error is not according to rule, and is therefore dismissed without further comment.

Judgment reversed, and a venire facias de novo awarded.    C.