Brownfield, Lee F., Jr. *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued May 4, 1976, before President Judge Bow-
MAN and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS and BLATT.  Judge KRAMER did not par-
ticipate.

*Donald J. McCormick,* Special Assistant Attorney
General, with him *Robert W. Cunliffe,* Deputy Attor-
ney General, and *Robert P. Kane,* Attorney General,
for appellant.

*William M. Radcliffe,* with him *Ira B. Coldren, Jr.,* and *Coldren & Coldren,* for appellee.

OPINION BY JUDGE BLATT, September 14, 1976:

This is an appeal by the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) from an order of the State Mining Commission (Commission) awarding damages to Lee F. Brownfield, Jr. for the taking of coal located underneath property owned by him in Fayette County.

Section 1 of the Act of June 1, 1933 (Act), P.L. 1409, *as amended,* 52 P.S. §1501 provides, *inter alia,* as follows:

"Whenever the Commonwealth has heretofore acquired or may hereafter acquire lands, easements or right of ways underlaid by mineable coal, the State Mining Commission created in accordance with the provisions of this act upon application of the Commonwealth, the county or the municipality within which such lands, easements or right of ways are situated or the owner of the coal underlying such lands . . . is hereby empowered to determine, authorize, and direct the underlying or adjacent coal, if any, to be left in place for the purpose of furnishing vertical or lateral support to said land, easement or right of way, the underlying or adjacent coal, if any, which may be removed, and the material, if any, to be substituted for the coal so removed, together with the method and manner of placing such material in the mine workings, for the purpose of furnishing both vertical and lateral support to such land, easement or right of way and the party or parties by whom the expenses thereof shall be paid. . . . This commission shall have exclusive jurisdiction of the mining of coal under lands, easements and right of ways purchased, condemned or otherwise acquired by the Commonwealth and judicial powers to hear and determine all

evidence which may be presented . . . to determine and assess damages, if any, for coal required by the said Commission to be left in place and benefits, if any, for improvements or betterments; to allocate among the parties in interest the cost of its proceedings as well as any work which it may order performed; and to enforce its orders and decrees through the court of common pleas of the county in which the lands, easements and right of ways purchased, condemned or otherwise acquired by the Commonwealth is situated. . . . All parties in interest shall have the same right of appeal from decisions, orders and decrees of the State Mining Commission, as now or hereafter provided for appeals from the decisions, orders and decrees of courts of common pleas. . . ."

Pursuant to this legislative authorization, Brownfield made an application to convene the State Mining Commission in Fayette County for the purpose of determining: (1) whether or not any coal underlying the condemned right of way across his property was required to be left in place, and unmined, for vertical and lateral support of the right of way; (2) the amount of coal, if any, required for this purpose; and (3) the damages suffered by him in the taking of that coal by PennDOT. The Commission held a hearing and determined thereafter: (1) that "there is (sic) 19.3 acres of mineable coal . . . underlying the premises taken by [PennDOT] which is needed for vertical and lateral support as set forth in Commonwealth Exhibit #1;"[1] (2) that "there is (sic) 8100 tons of

---

[1] PennDOT admitted into evidence an engineering study of the petitioner's property which indicated the condemned right of way and the limits of the area required for support of the highway. This study indicated that the "coal support area" contained 19.3 acres, of which 1.5 acres had less than 100 feet of cover ("no mining"), 11.0 acres had 100 to 200 feet of cover ("25% mining") and 6.8 acres had more than 200 feet of cover ("50% mining").

coal per acre;" and (3) that "the petitioner [Brownfield] . . . is entitled to damages in the amount of $42,606.00." PennDOT has appealed from this award, arguing that the Commission's findings are excessive and are not supported by the evidence on the record.

Our scope of review here is limited to a determination of whether or not the Commission's findings are supported by substantial, competent evidence and to determine that no errors of law have been made. *Moffat Appeal,* 400 Pa. 123, 161 A.2d 352 (1960); *Payne Appeal,* 350 Pa. 22, 38 A.2d 26 (1944).

When PennDOT exercised its power of eminent domain and appropriated the surface of Brownfield's land for a highway right of way, it also appropriated the subsurface strata of that land so far as such was necessary to support the surface of that highway. *Glen Alden Coal Company Case,* 350 Pa. 177, 38 A.2d 37 (1944). The Commission has exclusive jurisdiction to determine the amount of coal necessary to be left in place for the support of the highway, the amount of coal which is not necessary for support and which, therefore, is not taken and could be mined, and the value of the coal to be left in place. *Williams v. Department of Highways,* 423 Pa. 219, 223 A.2d 865 (1966); *Glen Alden Coal Company's Case,* 339 Pa. 149, 14 A.2d 76 (1940).

The Commission here received competent testimony[2] from the witnesses presented by both Brownfield and PennDOT as to: (1) the tons per foot-acre of coal underlying the right of way taken; (2) the depth of the vein of coal at that point; and (3) the

---

[2] It is apparent from the record that witnesses on behalf of both the petitioner and PennDOT were accepted by the Commission as experts without objection by either party as to their qualifications.

value of each ton of coal in place.[3] PennDOT further provided testimony as to the amount of coal necessary to be left in place for vertical and lateral support of the highway.[4] Clearly, the record here contains sufficient evidence upon which the Commission could make the necessary findings and, in doing so, the Commission, of course, is not required to accept all of the testimony of any of the witnesses, but may arrive at its own independent determination of damages, having heard all of the testimony offered. *Moffat Appeal, supra.*

"[T]he use of expert testimony is a means of presenting pertinent data to the Commission and of allowing the experts to advocate a method of valuation. The testimony of the expert witnesses as to their findings about the quality of coal condemned, recent sales, appropriate engineering tables, mining conditions, condition of tracks and seams, and similar data, is equally, if not more important than their final valuation of damages, for as a body of experts, *a Commission may use this information to arrive at a value themselves.*" *Moffat Appeal,* 400 Pa. at 129, 161 A.2d at 356. (Emphasis added.)

While, therefore, the Commission's order does not indicate the manner in which it determined the exact amount of damages, its award of $42,606.00 is amply

---

[3] In order to determine the amount of coal taken by PennDOT, it is necessary to determine the tons of coal per foot-acre and multiply that amount by the thickness, in feet, of the coal. The amount of coal taken is then multiplied by the value per ton in place. Brownfield's expert testified that the amount of coal taken for support was 1500 tons per foot-acre, that the vein was five feet thick and that the coal was worth $0.50 per ton. PennDOT's expert testified in these areas as follows: 1800 tons per foot-acre, 4 feet thick, $0.05 per ton.

[4] See footnote No. 1.

supported by the evidence.[5] Moreover, the Commission's order is clear that, pursuant to PennDOT's Exhibit No. 1, the amount of coal which must be left in place is as follows:

(1) in the 1½-acre area designated as having cover of less than 100 feet, 100% of the coal must remain;

(2) in the 11-acre area designated as having cover of 100 to 200 feet, 75% of the coal must remain; and

(3) in the 6.8-acre area designated as having cover of 200 feet or more, 50% of the coal must remain.

The coal not required for support (*i.e.*, 25% of the coal in the 11-acre area and 50% of the coal in the 6.8-acre) has not been condemned nor taken by PennDOT and may, therefore, be removed by Brownfield if he so desires and he will not be liable for any future subsidence of the highway if the coal is removed in a proper manner and within the maximum limits authorized by the Commission. *Glen Alden Coal Company's Case, supra.*

The order of the State Mining Commission dated October 6, 1975 is, therefore, affirmed.

---

[5] Using the "greatest" figures presented by the experts, the Commission could have determined that there were 1800 tons of coal per foot-acre with a depth of 5 feet and a value of $0.50 per ton. These figures, when multiplied together, produce a value for the coal taken of $4500 per acre. PennDOT has taken a total of 13.15 acres (100% of 1.5 acres + 75% of 11 acres + 50% of 6.8 acres) and, therefore, an award of up to $59,175.00 ($4500 per acre x 13.15 acres) here would have been supported by the expert testimony presented. PennDOT asserts that the Commission must consider "the amount of coal which could actually be recovered." PennDOT has not, however, cited any cases in support of this assertion and it would appear that the amount of coal actually "recoverable" would be an element that the Commission could consider in determining value and damages.