**In Re: Application of CONSOLIDATION COAL SALES COMPANY, Et. Al. to convene a state mining commission to determine underlying and adjacent support coal to be left in place, to assess damages, and other matters under lands located in Fallowfield Township, Washington County, Pennsylvania relative to a portion of the Mon/Fayette Expressway, S.R. 0043.**

**Parties in interest: Consolidation Coal Sales Company, DuPech, Inc., Consolidation Coal Company, and Consol Pennsylvania Coal Company, corporations, and Pennsylvania Turnpike Commission, a Commonwealth instrumentality**

**Pennsylvania Turnpike Commission, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 8, 2007.

Decided Sept. 7, 2007.

Samuel P. Kamin, Pittsburgh, for appellant.

Douglas R. Nolin, Washington, for appellees.

BEFORE: COLINS, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge.

OPINION BY Judge COLINS.

This is an appeal by the Pennsylvania Turnpike Commission (Turnpike) from an interlocutory order of a State Mining Commission (Commission) that determined the "date of taking" of support coal underlying portions of the Mon/Fayette Expressway (MFX) was November 7, 2005.[1]

Between 1994 and 1998, the Turnpike acquired a number of properties in Washington County, Pennsylvania, on which it subsequently constructed a seventeen mile section of the MFX. Consolidation Coal Sales Company, DuPech, Inc., Consolidation Coal Company and Consol Pennsylvania Coal Company (collectively, CCSC) own some or all of the coal reserves underlying the seventeen mile section of the MFX. Beginning in 1996, the Turnpike and CCSC engaged in sporadic discussions related to the construction of the MFX, and its impact on CCSC's coal reserves.

On July 30, 2001, CCSC filed a petition to convene a State Mining Commission to determine the amount of coal, if any, required to be left in place for vertical and lateral support of the MFX and assess and award damages due to the loss.[2] After

---

1. The Commission initially issued its decision on January 4, 2007. This appeal follows the Commission's order granting the Turnpike's Motion to Amend Commission Decision to Certify Interlocutory Order for Appeal on January 19, 2007.

2. Act of June 1, 1933, P.L. 1409, as amended, 52 P.S. §§ 1501–1507, commonly referred to as the Sate Mining Commission Act (Act).

some initial litigation, the Commission was formally convened in September of 2002.[3]

On October 6, 2005, the Commission issued an order directing the Turnpike to file, no later than November 7, 2005, "a letter showing what amount of support the Turnpike Commission needs for the highway and critical structures with respect to the Freeport seams of coal, including the location of the areas needed for support and approximate amount of coal to be used for that purpose." The order also directed CCSC to file a response no later than November 17, 2005. The order further directed each party to clearly indicate its proposed "date of taking" and the reasons therefore.

On November 7, 2005, the Turnpike filed its letter, indicating that it was waiving support under the roadway portion of the MFX, but required support coal to be left in place under the seven bridge structures. The Turnpike's proposed "date of taking" for the support coal was April 12, 2002, the date the MFX was dedicated and opened for public use.

CCSC filed its response on November 16, 2005, asserting that the "date of taking" could be no earlier than November 7, 2005, the date that CCSC claims it first received notice of the Turnpike's need of support coal. In response, the Turnpike claimed that it gave CCSC the benefit of the doubt with the date that it selected and asserted that based on case law it could have selected the earlier date of when each applicable surface property was acquired.

The Commission conducted hearings on October 18th and 19th, 2006, for the limited purpose of determining the "date of taking." The Majority determined that that date was November 7, 2005. In reaching this decision, the Majority distinguished prior case law that set the "date of taking" as the date of acquisition of the surface rights, noting that in those cases the same person owned the surface and mineral rights. Instead, the Majority relied on the notion of procedural due process, determining that the Turnpike could not acquire the support coal underlying the MFX prior to providing CCSC with actual notice of coal that it was taking. The Dissent rejected the Majority's due process argument, finding actual or constructive notice does not affect the "date of taking," but affects the running of the statute of limitations on the convening of the Commission. In the Dissent's view, the Turnpike appropriated the necessary sub surface support strata at the time that it appropriated the corresponding surface estates. The Turnpike's appeal from the Commission's decision is presently before the Court.[4]

On appeal, the Turnpike contends the Commission's November 7, 2005, "date of taking" determination is in error. In support of its position, the Turnpike argues that the Commission erred as a matter of law by concluding: 1) the State Mining Commission Act requires the Turnpike to notify CCSC of the nature and extent of coal required for support of the MFX, 2) that due process requires the Turnpike to provide CCSC with actual no-

3. *See In Re Application of Consolidated Coal Sales Company*, 802 A.2d 708 (Pa.Cmwlth. 2002).

4. Our standard of review of a Commission decision is limited to determining whether there has been an error of law or whether Commission's findings are supported by substantial, competent evidence. *Brownfield v. Commonwealth of Pennsylvania, Department of Transportation*, 26 Pa.Cmwlth. 308, 364 A.2d 767 (1976).

tice of the nature and extent of coal required for support of the MFX before the "date of taking" can occur, 3) that the "date of taking" is conditioned on an initial determination by the Turnpike regarding the extent of support necessary for the highway, 4) that due process requires written notice of the extent of coal necessary for support, 5) that the Turnpike is required to determine the coal necessary for support or the amount waived, and 6) that the uncontroverted evidence of record supports a determination that November 7, 2005, was the "date of taking." For the reasons that follow, we find the Commission erred in concluding that the date of notice to CCSC constitutes the "date of taking."

In Pennsylvania there are three estates in land that can be held separate and distinct from each other: the surface estate, the mineral rights estate, and the support estate. *Captline v. County of Allegheny,* 662 A.2d 691, 692 n. 1 (Pa. Cmwlth.1995). When the Commonwealth appropriates surface land that is underlaid by mineable coal, the Commonwealth, the county in which the land is located, or the owner of the coal underlying the land may, upon application, convene a Commission to determine "the underlying or adjacent coal, if any, to be left in place for the purpose of furnishing vertical or lateral support to said land ... [and] the underlying or adjacent coal, if any, which may be removed." Section 52 of the Act, 52 P.S. § 1501. The Commission has "exclusive jurisdiction of the mining of coal under lands ... acquired by the Commonwealth and judicial powers to ... determine and assess damages, if any, for coal required by the said Commission to be left in place and benefits, if any, for improvements or betterments." *Id.* Damages sustained by "the owner of the coal or the person entitled to remove the same, as a result of any obligation to furnish vertical and lateral support arising because of the acquisition of such land ... by the Commonwealth which obligation did not exist prior to the date of such acquisition, shall be determined by the State Mining Commission." § 1503.

■ It is a well established principle that when the Commonwealth appropriates surface rights for a public highway, it also appropriates the subsurface support strata so far as it is necessary to support the surface land. *Penn Gas Coal Co. v. Versailles Fuel Gas Co.,* 131 Pa. 522, 19 A. 933 (1890); *Commonwealth v. Pardee Bros.,* 310 Pa. 353, 165 A. 396 (1933); *Glen Alden Coal Company's Case,* 339 Pa. 149, 14 A.2d 76 (1940); *Brownfield v. Department of Transportation,* 26 Pa.Cmwlth. 308, 364 A.2d 767 (1976).

■ This principal is equally applicable to cases in which the surface owner owns all three estates, as well as cases in which the mineral and/or support estates are owned by an entity other than the surface owner. *See Penn Gas,* 131 Pa. at 533, 19 A. 933; *Pardee Bros.,* 310 Pa. at 362, 165 A. 396. Where the surface estate owner is different than the support and/or mineral estate owner, the Commonwealth's right to support upon acquisition of the surface estate is grounded in the concept that the agreements of private parties "cannot bind the state, or its grantee, entering by virtue of the title paramount residing in the sovereign." *Penn Gas,* 131 Pa. at 533, 19 A. 933. Otherwise, the acquisition of a surface estate without adequate support would be a worthless acquisition.

The language of the Act reflects this concept. The Legislature specifically recognized that the Commonwealth's entry upon the surface estate creates an obligation on the mineral and/or support estate to provide vertical and lateral support for the surface land. § 1503. That obli-

gation does not arise at some point after the Commonwealth's acquisition of the surface estate, but is keyed to the actual date of acquisition. The Legislature would not have done this if the "date of taking" of support coal was not intended to be the same date as the taking of the surface estate.

The Commission's insertion of the constitutional concept of notice, as it relates to the "date of taking," is misplaced. Relying primarily on our decision in *Captline v. County of Allegheny*, 74 Pa.Cmwlth. 85, 459 A.2d 1298 (1983), the Commission concluded that the Turnpike could not acquire support from CCSC's coal reserves prior to providing CCSC with actual notice of the intended taking.[5]

In *Captline*, a land owner acquired title to a property from a coal company in 1955. In the deed, the coal company reserved the mineral rights underlying the land. In 1958/59, the county condemned the land to build an airport and petitioned for a board of viewers. The landowner received notice of condemnation, but the coal company did not. In 1961, the landowner received compensation, but the coal company did not. In 1965, the landowner acquired the mineral rights. In 1979, the County entered a contract for the construction of a taxiway that provided the contractor with the right to take possession of any coal excavated. Subsequently, the land owner filed a petition for appointment of viewers and an action in trespass.

The two issues presented to this court were: 1) what was the extent of the 1958/59 condemnation, and 2) whether the statute of limitations barred recovery for the loss of coal. With regard to the first issue, the Court considered the language of the condemning document and determined that the county intended to condemn the entire estate, including the mineral estate. *Id.* at 1301.

With regard to the question of whether the statute of limitations barred recovery, the Court found the evidence presented was not sufficient to show that the notice provided to the coal company complied with the notice mandated by the due process clause of the fourteenth amendment.[6] *Id.* at 1301–02. The Court explained that "principles of fairness dictate that a person who was never notified of a condemnation and whose interest was not protected in the proceedings must later be permitted to seek compensation from the condemning authority." *Id.* at 1302. We remanded the matter to the trial court to consider the question of notice. When the case returned to this Court, we held that the statute of limitations did not bar the land owner's recovery because the county never gave the coal owner notice of the condemnation of the mineral estate. *Captline v. County of Allegheny*, 662 A.2d 691 (Pa. Cmwlth.1995). We explained that the statute of limitations did not begin to run until 1979 when the owner of the mineral estate had notice of the condemnation. *Id.* at 696. However, the date of taking, for valuation purposes, remained the original 1958/59 condemnation date.

As the *Captline* cases illustrate, the procedural due process concept of notice is pertinent to determining whether the owner of a property interest has a cause of action to pursue damages, not when a tak-

**5.** The Commission noted that the issues in *Captline* involved proceedings under the Eminent Domain Code, Act of June 22, 1964, Sp. Sess., P.L. 84, *as amended*, formerly 26 P.S. §§ 1–101–1–903, repealed by Section 5 of the Act of May 4, 2006, P.L. 112, Act 2006–34, effective September 1, 2006, which is inapplicable to proceedings before the Commission, but concluded the issue of notice remained pertinent to both types of taking.

**6.** U.S. Const. amend. XIV, § 1.

ing occurred. In the present action, if the "date of taking" was dependant on when CCSC received actual notice of the amount of support coal that the Turnpike required, the Turnpike would not have acquired surface support for the MFX until after the highway was constructed, dedicated and in use by the traveling public. Such a holding would be contrary to the Act's purpose of insuring "adequate support for state highways and other Commonwealth lands, easements and rights-of-ways and to protect such highways, etc., from possible subsidence caused by the removal of coal lying thereunder and to further protect the public traveling upon such highways." *Williams v. Department of Highways*, 423 Pa. 219, 223 A.2d 865, 867 (1966).

The Commission's conclusion, that the "date of taking" could not occur until the Turnpike notified CCSC of the amount of support that it required for the MFX, was in error. Accordingly, we reverse and remand, and direct the Commission to determine the "date of taking" in accordance with the foregoing Opinion.[7]

### *ORDER*

AND NOW, this 7th day of September 2007, the order of the State Mining Commission in the above-captioned matter is reversed and remanded with instructions to determine the "date of taking" in accordance with the attached Opinion.

Jurisdiction is relinquished.

---

**7.** Having determined the Commission erred as a matter of law with regard to this issue, the Court does not reach the remaining issues raised in the Turnpike's appeal.