## Nelson v. Garland et al. (City of Pittsburgh, Appellant).

Argued April 28, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Anne X. Alpern,* First Assistant City Solicitor, with her *William B. Secrist,* City Solicitor, and *Thomas L. Jones,* Assistant City Solicitor, for appellant.

*Herman W. Kaufmann,* with him *Jacob Roe,* for appellee.

OPINION BY KELLER, P. J., September 30, 1936:

This action of mandamus is concerned with the Act of July 11, 1917, P. L. 818, relating to dogs and the protection of livestock and poultry from damage by dogs, etc., and the Act of May 11, 1921, P. L. 522, relating to the same general subject. It arises from a petition filed by the plaintiff, Olga Nelson, for a writ of mandamus requiring the defendants, the Council of the City of Pittsburgh and the City, to pay her the sum of $276.35 damages and costs to which she averred she was entitled under a certificate filed by John A. Joyce, alderman, with said City Council, under the provisions of the Acts of Assembly above mentioned.

The Act of July 11, 1917, supra,—known as the Dog Law of 1917,—was declared, in section 36, to be intended as a complete and uniform system throughout the Commonwealth for the licensing of dogs and the protection of livestock and poultry from injury by dogs. Its title is as follows: "An Act relating to dogs, and the protection of livestock and poultry from damage by dogs; providing for the licensing of dogs;

regulating the keeping of dogs, and authorizing their destruction in certain cases; providing for the protection of licensed dogs, and for dogs temporarily imported for trial, show, and breeding purposes; prescribing certain privileges for hunting dogs, and dogs owned or used by the Board of Game Commissioners; providing for the assessment of damages done by dogs, and payment thereof by the proper county to the owners of livestock and poultry, and of damages to licensed dogs; imposing powers and duties on certain State, county, city, borough, town and township officers and employes, and on city councils of cities of the first and second class; and providing penalties."

During its passage through the General Assembly it probably was subjected to amendments and changes which left it finally in far from satisfactory condition. The Act provides for the issuing of dog licenses by the county treasurer on a form and at a fee to be fixed, within limits, by the County Commissioners, all fees to be turned into the *County funds* [Sec. 15]. Sections 25, 26, 27, 28 and 29 relate to claims for damages to livestock or poultry by dogs, the ascertainment of the amount of loss or damage by an alderman, or other named officer, following an examination and hearing, a report and certificate of the same filed with the county commissioners and payment of the same by the County out of the general fund of the County. They are too long to be quoted verbatim, but important provisions of them are as follows: Any person sustaining any loss or damage to any livestock or poultry by dogs may complain in writing duly signed by him to any township auditor, justice of the peace, magistrate or alderman, [hereinafter called alderman], stating when, where, and how such damage was done, and by whose dog or dogs, if known. The alderman shall at once examine the place where the alleged damage was sustained, and the livestock or poultry injured or killed,

if practicable. *He shall also examine under oath or affirmation any witness called before him.* After making diligent inquiry in relation to such claim, said alderman shall determine whether any damage has been sustained and the amount thereof, and, if possible, who was the owner of the dog or dogs which did the damage. The owner or keeper of the dogs shall be liable to the owner of such livestock or poultry in a civil action for all damages and costs, or to the county to the extent of the amount of damages paid by such county as hereinafter provided [sec. 25].

Upon making the examination required in section 25, the alderman shall immediately make a certificate thereto, [sic] signed and sealed by him, that such appraisement was regularly and orderly made. If by such examination it appears that any damage has been sustained by the complainant, the alderman shall deliver the report of such examination to the claimant, his agent or attorney, upon payment of the costs up to that time. Such report shall be delivered to the county commissioners to be filed in their office, [Sec. 26] [But see Secs. 28 and 29 as italicized below].

The alderman shall receive two dollars for each case and five cents per mile for each mile traveled, to be paid by the claimant, and included in the award of damages. [Sec. 27].

Upon the county commissioners receiving such report, if it appears that a certain amount of damage has been sustained by the claimant, they shall immediately draw their order on the treasurer of the county in favor of the claimant for the amount of loss or damage such claimant has sustained, according to such report, together with necessary and proper costs incurred. Such amount shall be paid by the proper county. *No person shall receive any order for any claim until the alderman before whom the claim was made has certified* that due diligence was made to ascertain whose dog or dogs

did the damage, and *that the carcasses of the livestock or poultry killed and for which damages have been assessed where* [were?] *buried within twenty-four hours after the assessment of damages.* The owners of any livestock or poultry killed by dogs, etc. shall be paid fifty cents each for burial of such livestock or poultry killed, to be paid as other damages under this section [1]. Upon payment by the county of the damages the rights of the owner of such livestock or poultry against the owner of the dogs, to the extent so paid by the county, shall enure to the benefit of the county [sec. 28].

No payment shall be made for any item which has already been paid by the owner of the dog or dogs doing the injury. *The fact that no such payment has been made shall be certified by the alderman* [sec. 29]. Section 29 also fixed the maximum payment for each horse or mule, head of cattle or head of swine. No maximum was fixed for poultry [2].

Other sections call for notice by the county commissioners to the owner of the dog or dogs, having caused the damage, to kill the same, unless he pays the damages suffered as aforesaid, and make other provisions not here material.

But by section 39 it is provided as follows: "The powers and duties given to and imposed upon county commissioners *and other officers* [3] by this act shall not extend to cities of the first and second class. In cities

---

[1] The incongruity—not to say, absurdity—of paying the same damages for the burial of a horse, cow, pig, sheep or chicken, was corrected as to all but cities of the first and second classes by section 29 of the Act of May 11, 1921, P. L. 522, which fixed a burial fee of $2.50 for each horse, cow, etc.; two dollars for each sheep, lamb, calf, goat, etc.; and ten cents for each head of poultry. The *burial expense* for 155 chickens killed or destroyed in this case was $77.50.

[2] Changed by Act of 1921, supra, which in section 30 fixes a maximum of $2 for each head of poultry.

[3] What 'other officers' are meant? Does it include auditors, justices of the peace, magistrates and aldermen?

of the first and second class the power and duty to fix and collect the license fees provided in section four of this act, and issue license tags, and otherwise perform and carry out the provisions of this act within the limits of such cities shall be, and are hereby, given to and imposed upon the council or councils of each of said cities respectively." This was evidently an afterthought or amendment intended to differentiate cities of the first and second classes from the rest of the State, but it was done so loosely as to render its legality and effectiveness in some respects doubtful. It will be noted that the title to the Act contains a clause, "providing for the assessment of damages done by dogs, and payment thereof by the proper *county* to the owners of livestock and poultry." There is not one word in the title providing for such payment by cities of the first and second classes. And while in section 39 the power and duty to fix and collect the license fees provided in section four of the Act is given to and imposed on the council or councils of cities of the first and second classes, who are to issue the license tags and otherwise perform and carry out the provisions of the Act within the limits of such cities, there is not one word in the Act that directs that the fees thus collected shall be paid into the treasury of the city or into the city fund instead of the county funds [sec. 15] or that the damages shall be paid by the city instead of by the county [sec. 28]. While it was probably so intended it certainly was not so expressed. There is not a word in the title or in the body of the Act making cities of the first and second classes liable for the payment of any damages to owners of livestock or poultry injured or killed by dogs, or, even, any provision for the payment of the dog license fees into the city treasury, or the city fund. While the right of the State through its legislature, to impose such liability on cities of the first and second classes cannot be ques-

tioned, the liability must be clearly and definitely imposed by statute. Liability will not be inferred. *Heid v. Allegheny County,* 122 Pa. Superior Ct. 312, 186 A. 215, 216.

The Act of 1917 was so unsatisfactory that in 1921 it was repealed by the Act of May 11, 1921, P. L. 522, section 43, "except in so far as it provides for the licensing of dogs and the payment of damages for livestock injured by dogs or for licensed dogs illegally killed in cities of the first and second classes." The new Act provides for the issuing of dog licenses by the county treasurer as the agent of the State. The State receives the license fees and pays the damages, when determined by the alderman after notice to the Secretary of Agriculture acting for the State, and a hearing fixed by the alderman and Secretary of Agriculture jointly.

But irrespective of the abovementioned defects in the Act of 1917, supra, and assuming for the purposes of this case that the Act does sufficiently impose on the City of Pittsburgh the duty of paying for damages to livestock and poultry when legally determined, we are of opinion that the judgment will have to be reversed because of the failure of the alderman to give notice to the City of Pittsburgh of the hearing held by him following the claim for damages filed by the claimant, for the purpose of examining into and determining whether damage was sustained and the amount thereof payable to the claimant, under sections 25 and 26 of the Act.

It is true that, unlike the Act of 1921, the Act of 1917 makes no express provision for the giving of such notice. But it is a cardinal principle of our law that liability cannot be imposed without notice to the party who is to be made responsible therefor. The State can impose, if it sees fit, liability on any of its governmental subdivisions or agencies for damages incurred by its

inhabitants who are injured by means or agencies licensed or permitted by it; and it may, even, deny such governmental subdivision or agency the right of trial by jury, or of appeal from a judgment or award duly made, if it sees fit to do so.  But it cannot deny the governmental subdivision or agency a hearing as to the amount of the judgment or award to be entered against it, or fix the amount of the same at a hearing of which no notice was given the party to be held liable.  Where an act of assembly makes provision for a hearing before a court or board or magistrate, it implies that the party or parties who are or may be affected by such hearing and the resultant action, shall have notice of it and opportunity to attend, be heard and take part.  Thus the Act of April 6, 1921, P. L. 107, which amended sections 8 and 16 of the Act of May 31, 1911, P. L. 468, establishing a State Highway Department and providing for the laying out of state highways, and provided that the damages for land taken, etc. in the changing of lines and location of state highways, should be paid by the county in which located, instead of by the State, made no express provision for notice to the County of the meeting of the viewers to fix the damages to be paid, but no one would think of questioning the right of the county to be notified of the meeting of viewers.  So the Act of April 29, 1925, P. L. 360, which conferred on the Department of Highways power to enter upon private property and cut, open and maintain drains and ditches necessary to carry off water from roads or highways constructed or improved at the expense of the Commonwealth, or under its supervision, and provided that the damages sustained by the owner of land so entered upon should be paid by the county in which the lands are located, made no express provision for notice to the county of the proceedings to fix and determine the damages, but no one could reasonably contend that notice to the

county of such proceedings and of the hearing of the viewers was not necessarily implied. In *Penna. R. R. Co. v. P. S. C.*, 118 Pa. Superior Ct. 380, 179 A. 850, we said (pp. 394, 395), that as soon as the Public Service Commission learned that a road or highway affected by a proceeding to eliminate a grade crossing had been made a state highway it was its duty to notify the Department of Highways of the proceeding. This, under the established principle that every party affected by a proceeding before a judicial or quasi judicial body should be given notice of it.

There are a number of cases in the federal courts cited by appellant, which hold that the 'due process' and 'equal protection' clauses in the 14th Amendment to the federal constitution require that a party affected by a judgment, award or decree shall have notice of the proceeding and an opportunity to be heard; and that corporations, including municipal corporations, are within the protection of the amendment. See *Frank v. Mangum*, 237 U. S. 309, 340; *Grosjean v. American Press Co.*, 297 U. S. 233; *Covington & Lexington Turnpike Co. v. Sandford*, 164 U. S. 578, 592; *Smyth v. Ames*, 169 U. S. 466, 522; *Board of Commrs. v. Bristow Battery Co.*, 28 Fed. (2) 195 (reversed on other grounds in 38 Fed. (2) 562); *Metropolitan R. R. Co. v. Dist. of Columbia*, 132 U. S. 1. See also, as to the necessity for a hearing, with notice, *Morgan v. United States*, 298 U. S. 468; *Acker et al. v. United States*, 298 U. S. 426; *Ashton et al. v. Cameron County Water Imp. Dist.*, 298 U. S. 513. The corresponding provision of our own constitution (Art. I, sec. 9) warrants the ruling that wherever liability is sought to be imposed on a person or corporation—including a municipal corporation—as a result of a hearing before some court, magistrate, board or tribunal, it is a necessary prerequisite to such liability that the party, if within the jurisdiction, shall have notice of and opportunity to

appear and be heard at such hearing. This is especially the case where the statute imposing such liability makes no provision for an appeal to a court or higher judicial body.

In passing we note that the proceeding does not affirmatively disclose that the requirement of the Act of 1917 as to certificate of the alderman of the burial of the carcasses of the poultry within twenty-four hours after the assessment of damages, which is made a condition precedent to payment of damages by section 28, was complied with.

In *Borough of Dunmore's Appeal*, 52 Pa. 374, relied on by the court below, the act of assembly [April 10, 1862, P. L. 528] providing for the appointment of commissioners by the court of common pleas to ascertain the indebtedness of the Township of Providence and what amount of the same, if any, was due and owing from the boroughs of Providence, Hyde Park, Scranton and Dunmore, notice of the hearing of the commissioners and opportunity to be heard was unquestionably given the Boroughs, though not expressly provided for in the Act. The decision of the Supreme Court was that the appellant borough, being a creature of the legislature, was not entitled to a *jury trial*. It does not warrant the proposition that the legislature may impose liability on a municipal corporation as the result of a judicial or quasi judicial hearing of which it had no notice and no opportunity to appear and be heard. The law contemplates, rather, that notice of every hearing which may result in imposing liability on any person or corporation, including municipal corporations and governmental agencies, is impliedly necessary if not expressly required.

As it does not appear that the City of Pittsburgh received any notice of the hearing held by Alderman Joyce or had any opportunity to appear at or be heard on the same, we are of opinion that any order or certifi-

cate issued by the Alderman fixing the City of Pittsburgh with liability and determining the amount thereof was invalid and imposed no legal liability on the City for its payment.

The judgment is reversed and is hereby entered for the defendant.