## Glen Alden Coal Company's Case.

150

Argued May 22, 1940. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Barnes and Patterson, JJ.

*J. H. Oliver,* with him *George H. Kaercher* and *F. B. Gelder,* for appellant.

*G. Harold Watkins,* for appellee.

*George W. Keitel,* Assistant Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellee.

Opinion by Mr. Justice Drew, June 24, 1940:

Pursuant to the provisions of the Act of May 26, 1937, P. L. 891, Glen Alden Coal Company filed a petition

in the court below praying that tribunal to convene a Highway Mining Commission to determine, authorize and direct, inter alia, the underlying or adjacent coal, if any, to be left in place for the purpose of furnishing vertical and lateral support to State Highway Route No. 185, which the Commonwealth of Pennsylvania, on or about August 4, 1930, relocated by appropriate action over petitioner's land underlaid with mineable coal; the underlying and adjacent coal, if any, which may be removed, and to assess damages for the coal which may be directed to be left in place. The Commission was convened and testimony taken, after which it rendered its decree directing that all coal underlying or adjacent to the highway, as relocated, may be removed without substitution of any material for the coal authorized to be mined, and that petitioner was not entitled to any damages. From that decree, the coal company has taken this appeal.

Appellant strenuously argues that the Commission erred in directing that all coal under the highway may be removed, since the testimony offered by appellant and the stipulation of counsel made at the hearing, this being the only evidence presented to the Commission and upon which it based its findings, clearly established that the removal of all coal under and adjacent to the highway would be a mining of coal necessary for support, although the subsidence would be of such a character that the highway might be used without danger to the traveling public. After a careful study of the Act under which the present proceeding was instituted, as well as a thorough review of the record, we are constrained to sustain the contention of appellant, since the Act imposed upon the Commission the authority only of determining the required amount of coal which must be left beneath or adjacent to the highway, or material to be substituted therefor, so that there be adequate vertical and lateral support afforded to the highway in order to prevent any subsidence, rather than,

as here determined by the Commission, the amount of coal which could be removed without danger to the traveling public.

Condemnation of the surface for highway purposes by the Commonwealth is an entry upon the subjacent strata so far as they are necessary to support the surface; and this is so even though the surface owner has released to the underlying owner his right to surface support: *Commonwealth v. Pardee Bros.*, 310 Pa. 353. See also *Penn Gas Coal Co. v. Versailles Fuel Gas Co.*, 131 Pa. 522. In mining coal under a public highway the removal must be in such a manner as not to injure the surface: *Breisch v. Coal Co.*, 267 Pa. 546. Good or bad mining in no way affects the right of surface support; and sufficient support can be demanded even though it be necessary to leave every pound of coal under the land untouched. See *Noonan v. Pardee*, 200 Pa. 474. It was not the legislative intent by the enactment of the Act of June 1, 1933, P. L. 1409, which was amended by the Act of July 18, 1935, P. L. 1306, and reënacted and further amended by the Act of May 26, 1937, P. L. 891, here under consideration, to authorize the waiver of such support beneath or adjacent to the highways of this Commonwealth. Prior to the enactment of this legislation, an owner, suffering damages by reason of the condemnation of the underlying or adjacent coal necessary for highway support, could only recover, as could any other property owner, through a board of viewers proceeding, and if such owner desired to mine the coal under or adjacent to the highway which he thought unnecessary for support, he did so at his own peril. In interpreting this legislation, it must be kept in mind that the primary intention of the legislature was the adequate support of public highways. It was never considered that any support could be removed which was necessary to uphold the highway, unless other means, filling in of new material or the furnishing of some artificial support, was provided. This for the rea-

son that modern highways, built at great expense to the public, which must be sound in order to be safe, cannot, except by clear legislative mandate, be permitted to be damaged or destroyed, or even made inconvenient to the traveling public, by the withdrawal from them of necessary support. It was for the purpose of retaining needed support with as little guesswork as possible that the Highway Mining Commission was created to determine how much coal, if any, could be taken out, so that the owner might mine that not required for support without liability for subsidence, and to relieve as far as possible the County, upon which the expense of condemnation might fall, of the heavy financial burden of paying for coal unnecessary for adequate support.

This Commission, with judicial powers and exclusive jurisdiction over the mining of coal within or under the rights of way of State highways, was empowered "to determine, authorize and direct the underlying or adjacent coal, if any, to be left in place for the purpose of furnishing vertical or lateral support to said highway, the underlying or adjacent coal, if any, which may be removed, and the material, if any, to be substituted for the coal so removed, together with the method and manner of placing such material in the mine workings, for the purpose of furnishing both vertical and lateral support to such highway and the party or parties by whom the expense shall be paid, . . . to determine and assess damages, if any, for the coal required to be left in place and benefits, if any, for improvements or betterments; to allocate among the parties in interest the cost of its proceedings as well as any work which it may order performed; . . ." A reading of this language of the Act shows clearly that the power conferred upon the Commission is that of determining the *coal required for subjacent and adjacent surface support* of State highways, and of authorizing the removal of the coal not so required. It was not the intent of the legislature to empower the Commission to authorize and di-

rect the removal of the coal required for highway support, where there would be any subsidence, merely because the removal thereof would not endanger the traveling public. There is no justification for determining a quantity to be retained less than that required for full support purposes. The plain purpose of the Act could only be that the Commission, after hearing the testimony offered by the owner of the coal, the County upon which the expense of condemnation may be imposed, and the State Highway Department upon which rests the responsibility for the construction, reconstruction and maintenance of all State highways and which is vitally concerned in protecting the welfare of the public, should ascertain and determine what coal, if any, could be removed without any subsidence of the surface and assess damages or benefits in connection with the improvement; which findings of the Commission, of course, must be supported by substantial evidence. See *Lowrie's Appeal,* 338 Pa. 203.

After the appellant in the instant case had submitted its testimony as to the coal beneath or adjacent to the highway which it contended was necessary in order to afford adequate and sufficient support, it was stipulated by counsel for the Highway Department, the County of Schuylkill, and the appellant, that "the engineers for said parties, if they were placed upon the stand and testified, would testify that the coal beneath the state highway involved in this matter and adjacent thereto, *which might otherwise be required for the purpose of furnishing vertical and lateral support for said state highway,* can be mined without danger to the traveling public upon said highway; that the damage, if any, to the highway, would be of such a character and nature that the highway might be used without danger to the traveling public, or temporary detours provided where subsidence in the highway might cause injury to the surface of the highway, requiring repairs." (Italics added). The Commission accepted and acted on this

stipulation, and erred in doing so. It is obvious that in directing the mining of *all* coal under the highway it sanctioned the removal of coal "required for the purpose of furnishing vertical and lateral support." That there would be subsidence of the surface was admitted, but the Commission was of opinion that this did not matter if the damage from such subsidence did not result in "danger to the traveling public"; that if the damage were only such that the highway could be used without danger, that such subsidence was of no consequence. Such conclusion is directly opposed to the words of the Act, and all the law of the Commonwealth on this subject; if followed, it would result in great loss and inconvenience to the people of the State, in damaged and impassable highways.

The fact that the County entered into an agreement with the Commonwealth to indemnify it for any damages or reimburse it for the replacement of the highway, if it be injured or destroyed by the removal of all the coal, in nowise affected the duty cast upon the Commission to ascertain the quantity of coal necessary to be retained beneath or adjacent to the highway to prevent subsidence.

The opinion of the learned President Judge of the court below, as chairman of the Commission, and the briefs and statements of able counsel at bar, cause us to add the following to clarify the situation, which was complicated by the passage of the Act of June 25, 1937, P. L. 2275.* After the conclusion of the instant pro-

---

* Entitled "AN ACT To promote safety for the traveling public on State highways; to extend the responsibility for subsidence of such highways by the failure of vertical and lateral support, and declaring said subsidence a public nuisance; to provide for inspection of mine maps by the Department of Highways, and the furnishing to said department of copies of such mine maps in certain cases; to authorize entry by the Department of Highways into mines in certain cases; and to provide for notices to the Department of Highways of certain mining operations under or adjacent to highways; and providing penalties."

ceeding, and all such similar actions, where the Commission has made its findings, based upon substantial evidence as to the quantity of coal which may be removed or material, if any, to be substituted therefor, the coal company is relieved from any and all liability for subsidence, if it remove, in the manner directed, only the quantity authorized by the Commission. That this was the intent of the legislature is made clear by section 2 of the Act of May 26, 1937, supra, wherein it is provided: "The condemnation or acquisition of any easement for highway purposes, as hereinabove provided, shall not be considered as including the condemnation or acquisition of any coal which may be removed under the terms of any agreement, decision, order or decree authorized by this act." Thus the coal authorized to be removed is not condemned and cannot be taken into consideration in assessing damages. Nor under such circumstances could the coal company be rendered liable for any damage caused by subsidence under the provisions of the Act of June 25, 1937, supra. To attempt to impose liability upon any owner for injury or damage to a highway in mining its coal after the Highway Mining Commission, acting under the provisions of the Act of May 26, 1937, supra, has properly authorized the removal of such coal which had never been condemned nor paid for, would undoubtedly be a taking of property without compensation and would render the Act of June 25, 1937, supra, unconstitutional. In holding an Act of this Commonwealth which attempted to impose liability upon those conducting mining operations of anthracite coal so as to cause subsidence, unconstitutional, Mr. Justice HOLMES, in *Penna. Coal Co. v. Mahon*, 260 U. S. 393, 415, said: "The rights of the public in a street purchased or laid out by eminent domain are *those that it has paid for*. If in any case its representatives have been so short sighted as to acquire only surface rights without the right of support, we see no more authority for supplying the latter *with-*

*out compensation* than there was for taking the right of way in the first place and refusing to pay for it because the public wanted it very much." (Italics added).

For the reasons stated, the record must be returned to the Highway Mining Commission in order that it may by further proceedings comply with the provisions of the Act of May 26, 1937, supra, by determining the quantity of coal, if any, which must be left in place for the purpose of furnishing vertical and lateral support to the highway to prevent any subsidence; the coal, if any, which may be removed; the material, if any, to be substituted for the coal which may be authorized to be removed; and to assess damages or benefits, if any, in connection with the improvement.

The decree of the Highway Mining Commission is reversed and the record is remitted to that tribunal for further proceedings in compliance with this opinion. Costs to abide the final disposition of the cause.