## Union Collieries Company Appeal.

Argued October 5, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Edward J. I. Gannon,* with him *S. M. Hazlett,* of *Hazlett, Gannon & Walter,* for appellant.

*Nathaniel K. Beck,* Assistant County Solicitor, with him *Walter P. Smart,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE MAXEY, November 23, 1942:

This is an appeal from the judgment of the Highway Mining Commission rendered under the provisions of the Act of May 26, 1937, P. L. 891, which created that Commission with judicial powers, to have exclusive jurisdic-

tion over the mining of coal under the right of ways of State highways and for assessment and award of benefits and damages for coal required to be left in place to furnish support for highways, etc.

On May 4, 1937, the Governor approved plans of the Department of Highways for the improvement of State Highway Route No. 737, a portion of which is laid out over coal owned by the Union Collieries Company in Plum Township, Allegheny County. The Commissioners of the latter county agreed by resolution to assume the payment of damages resulting from this improvement.

On petition of the Union Collieries Company, the Commission was duly convened. After hearing, it ordered that 50% of the coal, i. e. 66,537 tons, should be left for the support of the highway, that the value was 22.6 cents a ton, and that the damages amounting to $15,037.36 be assessed against the County of Allegheny.

Prior to the official action in widening, relocating, and paving with concrete this highway, it had been a "black top" road, and since such a road is "flexible", i. e. it will bend and not break when subsidences take place, the Company alleged it had been its practice to mine all the coal under this road.

The Commission limited its award of damages to the portion of the highway outside the lines of the old road and refused to award any damages for the coal which in order to support properly the entire concrete road would have to be left also under that portion of the highway which was formerly only a "black top" road. The Commission also refused to allow damages by reason of the additional cost and inconvenience in mining the other 50% of appellant's coal. Under the order of the Commission, the 50% of the coal left in place was to be in regularly spaced pillars and not in a solid block.

It is the contention of appellant that all the owners of coal lying beneath a public highway owe to that highway is the duty of support, and that as long as the "black top" highway existed, the owner of the coal was at liberty

to remove a very large portion* of the underlying coal and that when a cement highway was laid over the old highway, more coal was required for its support and for this additional coal necessarily left in place for such support the owner was entitled to compensation.

The contention of appellant is negatived by what was expressed and implied in this Court's opinion in *Penn Gas Coal Co. v. Versailles Gas Company*, 131 Pa. 522, 533, 19 A. 933, as follows: "An entry by the State upon the surface is an entry upon the subjacent strata so far as they are necessary to support the surface for the purposes of the canal, railroad, pipe line, or other structure to be built thereon . . . The character of the structure to be put upon the surface, the use to which it is devoted . . . are circumstances to be taken into account in determining the amount of support needed and of the compensation to which the coal owner is entitled." In *Breisch et al. v. Locust Mountain Coal Co., et al.*, 267 Pa. 546, 550, 110 A. 242, this court said: ". . . When one owns the fee in the minerals under the surface of the highway . . . they may work such mines, but must do so in such a way as not to cause the road to subside: 17 Eng. Ruling Cases p. 554." In *McGregor et al. v. Equitable Gas Company*, 139 Pa. 230, 237, 21 A. 13, this court said: "An entry upon land made by virtue of the right of eminent domain confers a right to the surface supported by the subjacent strata. The grantee of the commonwealth may insist on the full measure of support which the law gives him, . . . He ought to pay . . . the depreciation in price of the property by reason of the servitude imposed upon it." See also *Glen Alden Coal Company Case*, 339 Pa. 149, 14 A. 2d 76. When the high-

---

* Appellant's engineer testified that under a "black top" road it was not necessary to leave any coal, as such a road "will bend along with the subsidence" while the concrete road . . . will shear off". The State Highway engineer testified that it would probably not be necessary to leave as much coal under a "black top" road as under a cement road.

way referred to as the "black top" highway was laid out, there was then a condemnation of a sufficient amount of subjacent strata to give adequate support of the highway both *then and thereafter.* A servitude was then laid upon the property; how "heavy" that servitude might later prove to be could not then be determined with mathematical accuracy, but those who fixed the compensation to be paid the owner of the coal condemned for highway support at that time knew that the duty of supporting that highway, which duly rested upon the owner of the subjacent strata, was *absolute,* and it is to be assumed that the compensation awarded was ample to cover the depreciation in value of that underlying property by reason of the permanent highway servitude then laid upon it. It would be utterly impracticable to permit successive proceedings for the award of additional damages to the owner of the subjacent coal every time the exigencies of public travel increased the weight of travel on that highway and required the construction of a road of more rigidity than its resilient predecessor. When the underlying support of a highway is for the first time condemned by the State in the exercise of its power of eminent domain, the state says, in effect, to the owner: "Our right to this support is absolute; you will now be fully compensated for our taking of it to the extent your property has been depreciated thereby, and if you so impair this support as to cause the road to subside under any future authorized public use of this highway, you will be answerable therefor." The owner of the subjacent coal is not entitled to additional compensation for surface support every time the burden on that support physically increases. In law there was only one "taking" and there can be but one award of compensation.

Appellant also contends that it is entitled to damages "for the increased cost and inconvenience for the mining of 50% only of the coal under a road when he is required to leave the remaining 50% in regularly spaced blocks or pillars for support of the state highway."

The Commission properly rejected this claim. See Section 1 of the Act of May 26, 1937, supra, which authorizes the Commission "to determine and assess damages, if any, for coal required to be left in place of benefits, if any, for improvements or betterments". The Commission can consider any factor involved in leaving a certain amount of coal in place, if that factor has a substantial bearing on the question of damages or benefits, but we are not convinced by this record that when the Commission awarded damages amounting to 22.6 cents per ton for the 66,537 tons to be left undisturbed, its award was inadequate. The damage arising from the alleged "inconvenience" in mining only 50% of the coal, leaving the rest intact in that area, is something not susceptible of much more than a guess, and is therefore speculative. The reasonableness of the Commission's award of damages has not here been successfully challenged.

The judgment is affirmed.