## Philadelphia College of Law, Inc., v. Morrison, Secretary of the Commonwealth

*Frank H. Hean, Leroy W. Householder,* and *James J. Regan, Jr.,* for petitioner.

*John W. Kephart, Jr., H. J. Woodward,* and *William R. Rutter,* Deputy Attorneys General, and *James H. Duff,* Attorney General, for defendant.

HARGEST, P. J., March 13, 1944.—This matter comes before us upon a motion to quash the alternative writ of mandamus.

The petition for the alternative writ avers:

The Philadelphia College of Law, Inc. (hereinafter called College), is a nonprofit educational corporation, incorporated by the State of Delaware, January 17, 1929, and empowered, inter alia:

"To establish . . . regular courses of instruction of collegiate or university grade . . . in the higher learning of the law and jurisprudence, . . .

"To acknowledge proficiency in the several branches of higher learning thus offered by granting diplomas and conferring degrees . . . and to confer honorary degrees . . ."

On January 29, 1929, petitioner was registered in the office of the Secretary of the Commonwealth, in accordance with the Act of June 8, 1911, P. L. 710, and

filed its report and statement in the office of the Auditor General, pursuant to the Acts of June 1, 1889, P. L. 420, and May 8, 1901, P. L. 150, and amendments.

Thereafter petitioner did establish and conduct the College of Law in the City of Philadelphia, and "has continued to do business as such and to exercise all of its corporate powers, rights, privileges and franchises within Philadelphia, Pennsylvania, from that time until March 6, 1943".

Petitioner, in accordance with the Nonprofit Corporation Law of May 5, 1933, P. L. 289, obtained, as of October 3, 1933, from the Secretary of the Commonwealth a certificate of authority authorizing it "To teach law and jurisprudence and the several arts and sciences, acknowledging the attainments of students by awarding certificates and diplomas admitting to the several grades of proficiency therein."

The State Council of Education communicated to the Secretary of the Commonwealth that, upon advice of the Department of Justice, "the question concerning degree-granting powers of the Philadelphia College of Law be referred to the Secretary of the Commonwealth with the recommendation that she take such action as she deems appropriate concerning the complaint that this institution has violated the provisions of its certificate of authority".

The Secretary of the Commonwealth, pursuant thereto, on or about September 23, 1942, sent to petitioner a formal written notice, as follows:

"Upon complaint of the State Council of Education . . . you are hereby notified that the conferring of degrees in art, pure and applied science, philosophy, literature, law, medicine, and theology, or any of them constitutes a violation of the Nonprofit Corporation Law, . . . section 211 and section 902; that the certificate of authority heretofore granted . . . will be revoked and cancelled unless such default shall be cured

within thirty days after the mailing of this notice; and further, that if such default shall not be cured within such period of thirty days the Department of State will revoke and cancel the certificate of authority. . . ."

On December 14, 1942, counsel for petitioner wrote the Secretary of the Commonwealth protesting against "an ex parte finding of an alleged unlawfulness . . . without prior notice and a fair opportunity to be heard and without any evidence having been offered under the usual legal safeguards"; and that "In so doing, you, yourself, have not complied with the provisions of article IX, sec. 911, which you cite in support of your action."

After several postponements granted by the Secretary of the Commonwealth, no further averments having been made against petitioner, the Secretary of the Commonwealth, by letter dated February 18, 1943, notified petitioner's counsel that: "We are unable to meet your request to have another conference appointment on March 3. We have, therefore, fixed Tuesday, March 2, at 3 p.m., as the time for the meeting."

Whereupon petitioner's counsel, on February 26, 1943, filed a paper called "Respondent's Statutory Demurrer", in which he set out at length:

"Said complaint and notice of complaint are utterly vague, uncertain and indefinite, and they contain no factual averments whatever upon which such action for revocation can be predicated by complaint, or definitely answered with exactitude by the respondent.

"Said alleged complaint and notice of complaint contain merely erroneous and unsupported conclusions of law . . ."; and averred that said conclusion of law was erroneous because of the construction placed by the secretary upon sections 211 and 902 of the Nonprofit Corporation Act, and that the Secretary of the Commonwealth's power of revocation requires findings of fact before any revocation of a certificate of authority.

On March 2, 1943, counsel appeared at respondent's office, but without conferring with petitioner's counsel or affording any hearing a peremptory order was made, as shown by the record as follows:

"Now, this second day of March 1942, no action having been taken by the respondent in compliance with said notice, the certificate of authority issued to the respondent, Philadelphia College of Law, Incorporated, is hereby ordered revoked."

Thereupon petitioner's counsel took an exception to the order for the reasons stated in the written "Statutory Demurrer" and for the additional reason "that the notice referred to in the order never contained any information or suggestion with regard to how or in what way the Secretary of the Commonwealth considered the Certificate of Authority [ought] to have been amended within the time specified" and that "the respondent is entitled to a pleading containing factual averments of the alleged violations with definite specifications therein and an opportunity to reply and to be heard by its witnesses and counsel according to the principles of due process of law".

Thereafter the petition for writ of mandamus was presented. A motion to quash was then made, averring that the petition failed to set forth any cause of action, because there was no right in petitioner to confer degrees in this State, and that the petition does not set forth that petitioner complied with sections 211 and 902 of the Nonprofit Corporation Law; that the petition fails to aver that petitioner was not fully notified that conferring degrees constituted a violation of the Nonprofit Corporation Law or that 30 days was insufficient time "to cure said default", and that petitioner "fails to set forth any refusal on the part of respondent to perform any act or duty enjoined upon him by law".

The questions involved are:

1. Whether the order of revocation was based upon a proceeding which afforded due process of law;

2. Whether petitioner had a vested property right which could not be taken away; and

3. Whether petitioner is entitled, under the law, to confer degrees.

We have fully stated the averments of the petition, and the whole controversy rests upon the sufficiency of them.

We think mandamus is the appropriate remedy for the relief that petitioner seeks.

Under section 3 of the Mandamus Act of June 8, 1893, P. L. 345, sec. 3, 12 PS §1913, "The writ of mandamus may issue upon the application of any person beneficially interested." And there can be no question that petitioner in this case is "beneficially interested". It is seeking to save the right to do business which the State has granted to it. See Loraine v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Co., 205 Pa. 132, and Edelman v. Boardman, Secretary of Revenue, 332 Pa. 85.

We have also carefully considered the structure of the petition for mandamus in the light of the motion to quash.

In Pasquinelli v. Southern Macaroni Mfg. Co., 272 Pa. 468, the court said (p. 469, syllabus):

"An applicant to quash a writ . . . must point to some defect in the record which renders the proceeding fundamentally irregular . . .

"If the most that is averred is a defense on the merits, or simply a good legal answer . . . such a defense must be developed at the trial . . ."

And at page 473 it was said:

"The general rule still is, however, that writs will not be quashed unless some fundamental irregularity appears in the record itself. . . ."

Inasmuch as the only questions which arise upon this petition involve the interpretation of statutes

when applied to the facts and the motion to quash definitely brings that construction in issue and does not relate to facts, it is tantamount to averring a defense on the merits of the proceeding.

But we are confronted, first, with a proposition as to whether, upon the showing of this petition, there was anything which approached the requirements of due process of law leading up to the order made by the Secretary of the Commonwealth.

In Armour Transportation Co. v. P. U. C., 138 Pa. Superior Ct. 243, 249, it is said:

"The requirement of due process of law in procedural matters applies to proceedings before administrative tribunals as well as before judicial bodies. It is a well-recognized principle in our law that no man's property rights shall be impaired or penalties imposed without notice and an opportunity to appear and be heard: Natl. Automobile Service Corp. v. Barfod, 289 Pa. 307, 137 A. 601. Our present Chief Justice in that case stated (pages 311-312) : 'The requirement of due process of law, however, applies to administrative as well as to judicial proceedings. The doctrine of notice and hearing thus becomes a more potent force in our land because it applies to the decisions and acts of administrative officials and, unless there are extraordinary emergencies, this essential requisite of due process cannot be dispensed with. . . .'

"Chief Justice Hughes . . . stated, in Railroad Commission v. Pacific Gas & Electric Co., 302 U. S. 388, 393, 58 S. Ct. 334, 82 L. Ed. 319: 'The right to a fair and open hearing is one of the rudiments of fair play assured to every litigant by the Federal Constitution as a minimal requirement: . . . There must be due notice and an opportunity to be heard, the procedure must be consistent with the essential of a fair trial, and the Commission must act upon evidence and not arbitrarily.' Justice Cardozo, in the Ohio Bell Tele-

phone Company case, discussing the necessity of an open and fair hearing, said (p. 305) : *'There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored.'*

"Our President Judge, in Nelson v. Garland et al., 123 Pa. Superior Ct. 257, 266, 187 A. 316, stated [with reference to the due process clause of the Federal Constitution] : 'The corresponding provision of our own constitution (Art. I, §9) warrants the ruling that *wherever liability is sought to be imposed on a person or corporation . . . as a result of a hearing before some court, magistrate, board or tribunal, it is a necessary prerequisite to such liability that the party, if within the jurisdiction, shall have notice of and opportunity to appear and be heard at such hearing.'* See, also, Kariher's Petition (No. 1), 284 Pa. 455, 470, 131 A. 265." (Italics supplied.)

In National Automobile Corp. v. Barfod, 289 Pa. 307, it is held (syllabus) :

"Due process applies to administrative as well as to judicial proceedings."

And at page 311 it is said:

"The decision of administrative bodies, when the police power in certain phases of administrative acts is under consideration, may be of a quasi judicial nature, as when law is applied to the facts. In all such cases, notice and hearing are imperative."

And, after considering section 10 of the Automobile Company Operators Association Act of May 10, 1921, P. L. 442, it is said (p. 312) :

"Section 10 reposes an autocratic power in the insurance commissioner. He may not only investigate, but he may also determine whether liquidation or closing shall take place. He may seize the property of the corporation, wind up its business, and distribute the assets, without accounting to any one. . . .

"No power is more contrary to our ideals and the principles fundamental to our republican form of government. It savors more of an age long since passed, for in the hands of an irresponsible, radical authority, whose chief concern is ruin of property, such powers may be abused shamefully. The Constitution guarantees to those who invest their property in business enterprises that it will not be taken without due process of law. This section of the act so flagrantly violates the due process clause and our Bill of Rights that no defense can be made for it."

In Nevins Drug Co. v. State Board of Pharmacy, 49 Dauph. 145, we considered at some length the duty of the administrative board to act within the requirements of due process, and said (p. 151):

"This permit was first refused because, according to the letter of the secretary, there were some violations of an agreement as to illegal advertising, and the refusal was without any semblance of a hearing. Subsequently, after a hearing, according to the letter of the secretary, the Board in an executive meeting refused the permit because it deemed the company 'not qualified to receive a pharmacy permit', without then giving any reasons.

"The literature of the law is now replete with cases to show that such conduct on the part of administrative boards cannot be sustained, and that such boards cannot lawfully exercise unlimited discretion where the legislature has prescribed no limits within which to confine such discretion. And the power of administrative tribunals under such a statute cannot be sustained upon the theory that it must be assumed that they would act for the public good."

In the light of the authorities, an examination of the conduct of the Secretary of the Commonwealth in the instant case shows that there was an utter lack of due process of law. Notwithstanding the secretary's atten-

tion was repeatedly called to the legal duty resting upon her by letter, demurrer, and exception, no attention was paid to any request for a proper proceeding.

The Nonprofit Corporation Act, by section 911, gives the right to the Department of State to revoke a certificate of authority. But the revocation must be based upon a *finding* of one or more of five factual situations: (1) That it is doing a business which a domestic nonprofit corporation could not do; (2) is exceeding the authority contained in its original or amended certificate of authority; (3) has changed its name or·the location of its registered office without first securing an amended certificate of authority; (4) failed to file a copy of its articles, or a copy of any amendments thereto, or its certificate of authority, or any amended certificate of authority, in the office of the recorder of deeds of the county in which its registered office is situated; or (5) it is violating any of the laws of this Commonwealth.

This record not only shows no adequate finding, but it shows no reasonable notice, no definite complaint as to what petitioner should meet, and no. adequate hearing.

The inception of the proceeding was a letter from the State Council of Education to the Secretary of the Commonwealth, indicating that that council had determined that "the question concerning degree-granting powers of the Philadelphia College of Law be referred to the Secretary of the Commonwealth with the recommendation that she take such action as she deems appropriate concerning the complaint that this institution has violated the provisions of its certificate of authority". There is not a suggestion there as to the manner in which the College of Law had violated its certificate of authority.

Thereupon the Secretary of the Commonwealth notified the college that upon that complaint the conferring

of degrees of various kinds constitutes a violation of law, without indicating when, where, how, or what degrees it is alleged the college conferred. And the secretary says that "the certificate . . . will be revoked and cancelled unless such default shall be cured within thirty days", without indicating in what way the default should be cured.

The only default mentioned was the inference that some degree or degrees had been conferred. That default could have been cured by not thereafter conferring any degrees, and there is no evidence that any degrees were thereafter conferred.

On October 14, 1942, counsel for the college protested in writing to the secretary that she could not "legally render an ex parte finding of an alleged unlawfulness against any person or corporation without prior notice and a fair opportunity to be heard and without any evidence having been offered under the usual legal safeguards". He requested a conference. After some delay, the secretary, on February 18, 1943, wrote counsel declining a "conference appointment" on March 3rd, but "fixed Tuesday, March 2, at 3 p.m., as the time for the *meeting*".

Whereupon counsel filed, on February 26, 1943, what he called a "Statutory Demurrer" to the proceeding, calling attention to the requirements of due process of law and the duty of the secretary under the statute.

On March 2nd, according to the extract of what appear to be the minutes of the proceeding, attached to the petition (which, under the present motion, we must take as correct), there was announcement by the Deputy Secretary of the Commonwealth that this time had been fixed, that a 30 days' notice dated September 18, 1942, was served upon the college "to amend its certificate of authority to comply with the laws of this Commonwealth", and he immediately rendered judgment as follows:

"Now, this second day of March 1942, no action having been taken by the respondent in compliance with said notice, the certificate of authority issued to the respondent, Philadelphia College of Law, Incorporated, is hereby ordered revoked."

Let it be noted that the notice was to "cure a default" and not to amend "its certificate of authority". Furthermore, the certificate of authority does not authorize conferring of degrees, and if the conferring of degrees were the only complaint no amendment would seem to be necessary.

No opportunity apparently was given to counsel to be heard nor was any suggestion ever made as to how the certificate of authority should be amended before that order was pronounced. Thereupon counsel took an exception again, for the reason stated in the demurrer which he filed, and that his client was "entitled to a pleading containing factual averments of the alleged violations with definite specifications therein and an opportunity to reply and to be heard by its witnesses and counsel according to the principles of due process of law".

It is hardly necessary to comment upon this proceeding. At no step were the processes of law afforded to petitioner. No specific charges of violation were given and no semblance of an adequate hearing afforded.

It follows that, under the present state of the record, the motion to quash must be overruled and respondent given an opportunity to answer.

However, in reaching this conclusion, we are not in any sense passing upon the merits of this controversy, and it is without prejudice to the Secretary of the Commonwealth, if he so desires, to institute a new proceeding, giving to the college adequate notice and opportunity to be heard, in which event it may not be necessary to continue to litigate under the present proceeding.

And now, March 13, 1944, the motion to quash the alternative writ of mandamus is hereby overruled, and respondent is directed to answer within 15 days from this date.