Glen Alden Coal Company Case.

178

Argued May 24, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

*Alexander S. Gorny,* Assistant City Solicitor, with him *Jerome I. Myers,* City Solicitor, for appellant.

*H. Ray Pope, Jr.,* with him *Thomas C. Evans, Phil H. Lewis,* Deputy Attorney General, and *James H. Duff,* Attorney General, for Commonwealth, appellee.

*J. H. Oliver,* with him *Franklin B. Gelder* and *O'Malley, Hill, Harris & Harris,* for Glen Alden Coal Company, appellee.

Opinion by Mr. Justice Horace Stern, June 30, 1944:

On this appeal the City of Scranton denies its liability to pay damages for coal required to be left in place for the support of land taken in the improvement and

relocation of certain state highways within the boundaries of the city. It also questions the constitutionality of the State Mining Commission legislation of 1935, 1937 and 1941.

In pursuance of the Acts of June 22, 1931, P. L. 720, and July 12, 1935, P. L. 793, the Department of Highways prepared plans, subsequently approved by the Governor, for the widening and improvement as state highways of portions of West Market Street and the relocation and construction of a state highway route on Oak and Market Streets in the City of Scranton. The lines, grades, courses, distances and structures shown on these plans were duly adopted by ordinances passed by the City Council. Glen Alden Coal Company filed petitions, which were afterwards consolidated into one proceeding, for the convening of a State Mining Commission to determine the amount of coal necessary to provide support to the surface upon which these highways were located and to assess the resulting damages sustained by the company as the owner of such coal. Engineers for the company, the Department of Highways and the City of Scranton came to an agreement as to the quantity of coal required, and all parties agreed also as to its value, to wit, $33,427.20. Therefore it was not necessary to submit any evidence to the Commission and that body accordingly determined that the City of Scranton was liable in damages to Glen Alden Coal Company in the amount stated, and judgment was entered in the Court of Common Pleas upon that award.

The Sproul Highway Act of May 31, 1911, P. L. 468, conferred no authority on the State Highway Department to change the width, lines or grades of a road or street within the limits of a city, but on the contrary provided that it should not be construed as in any manner including or interfering with the roads, streets and highways in any of the cities, boroughs or incorporated towns of the Commonwealth.

The Act of June 22, 1931, P. L. 720, previously referred to, stated that certain streets therein designated in cities of the second class, second class A, and third class, were adopted by the Commonwealth and should be taken over by it, but section 7 provided that the Department of Highways should not change the width, lines, or grades of such streets without the consent of the city evidenced by a duly enacted ordinance, and in the event of any such change of width, lines, or grades, the city should be responsible for the payment of any damages which might be occasioned thereby. The Act of July 12, 1935, P. L. 793, contained an identical provision; this act authorized the Secretary of Highways, with the consent of the Governor and of the city expressed by ordinance or resolution, whenever any part of an existing location of a state highway route was deemed dangerous or inconvenient, to relocate it to pass over existing streets or new streets laid out and opened by the city. It will be seen, therefore, that the improvement and widening of existing streets and the opening of new streets were left wholly within the power of the city; under such circumstances the appropriation of the necessary land and easements was an appropriation by the city and not by the Commonwealth. Even if these two acts had not expressly provided that the city should be liable for the payment of the damages such liability would nevertheless have resulted: *Fetherolf's Petition*, 84 Pa. Superior Ct. 514, 521, 522; *Blainesburg-West Brownsville Road*, 293 Pa. 173, 142 A. 319; *Ashley Borough Appeal*, 348 Pa. 322, 35 A. 2d 74. While the cases thus cited dealt with the liability of boroughs the principle upon which they were decided is applicable here, nor is there any basis for the distinction suggested by appellant between the city's liability where existing streets are widened and improved and where a state highway is relocated so as to pass over a new street declared to be opened to public use in the ordinance by virtue of which the relocation is permitted.

It being, then, the duty of the city to pay the damages incident to the widening and relocation of these state highways within its borders, those damages necessarily include the value of the underlying coal which must be retained in place for the purpose of support,—a servitude which has come to be known as the "third estate".[1] An entry upon the surface of the land in the exercise of the power of eminent domain is an appropriation of the subjacent strata so far as they are necessary to support the surface of the highway: *Penn Gas Coal Company v. Versailles Fuel Gas Co.,* 131 Pa. 522, 532, 533, 19 A. 933; *Commonwealth v. Pardee Bros.,* 310 Pa. 353, 361, 362, 165 A. 396, 398; *Glen Alden Coal Company's Case,* 339 Pa. 149, 152, 14 A. 2d 76, 79; *Union Collieries Company Appeal,* 345 Pa. 531, 533, 29 A. 2d 26, 28. It is the damages for such an appropriation that constitute the subject of the award made by the State Mining Commission.

As to the attack made by the city upon the statutes creating the Commission there would seem to be no justification here for complaint, since the city admits that the amount of the award was correct. The city's real grievance is that liability was placed upon it instead of upon the Commonwealth, but its liability is fixed by the law and was not a matter within the discretion of the Commission. Nor can there be any valid constitutional objection to the acts which established the State Mining Commission. While the preliminary appraisement of damages resulting from the exercise of the right of eminent domain is generally entrusted to a body of viewers, it is not a violation of the provision against special legislation that such appraisement should be made by a Commission consisting of the President Judge of the Court of Common Pleas of the county, one member of the Public Utility Commission or an engineer desig-

[1] See *Smith v. Glen Alden Coal Co.,* 347 Pa. 290, 304, 32 A. 2d 227, 235.

182

nated by it, the Secretary of Mines or his designated representative, the head of the department, board or commission of the State government owning the lands, easements or rights of way in question or his designated representative, and an engineer designated by the owner or person entitled to remove the coal, as provided by the Acts of July 18, 1935, P. L. 1306, May 26, 1937, P. L. 891, and July 3, 1941, P. L. 259. The question as to the amount of coal that should be left in place for the purpose of furnishing support to a highway or other land taken under the right of eminent domain, as well as the value of such coal, is one that requires enormous technical and expert knowledge and with which ordinary viewers would be utterly unable to cope. The determination of the value of *surface* lands is something within the intellectual ken of ordinary citizens, but the question of the extent and value of the "third estate" is a subject requiring a comprehension of scientific principles and their application, and this fact justifies the creation of a different tribunal to deal with that problem. There is no reason why the legislature may not make such tribunal a permanent body and confine its personnel to specialists and experts: *Commonwealth ex rel. Kelley v. Cantrell*, 327 Pa. 369, 193 A. 655. It must be borne in mind that proceedings before the Commission are not a final step; apart from the inherent power of judicial review by certiorari, the Act of 1941 reserves the right of appeal, and also of a jury trial to any party entitled to demand such a trial under Section 8 of Article XVI of the Constitution.[2] The reservation of these rights is for the protection of the owner whose property is being appropriated, for municipalities are not constitutionally entitled thereto: *Borough of Dunmore's Appeal*, 52 Pa.

[2] It was this lack of the right to a jury trial and to an appeal to a judicial tribunal that caused the Act of April 1, 1870, P. L. 751, to be declared unconstitutional in *Re Woodland Avenue*, 178 Pa. 325, 35 A. 922.

374; *Carroll's Appeal*, 336 Pa. 257, 259, 9 A. 2d 407, 408; *Pittsburgh & Allegheny Telephone Co. v. Braddock Borough*, 43 Pa. Superior Ct. 456, 463, 464.[3]

As far as the personnel of the Commission is concerned, the fact that it includes an engineer designated by the owner of the coal does not constitute the granting to such owner of any special privilege within the meaning of Section 7, Article III of the Constitution. The owner's representative is only one of a Commission of five members and therefore without any power to control its findings. Nor is there any constitutional objection to the fact that the municipality does not have a representative on the Commission. Municipal corporations are merely agents of the state, created, governed, and the extent of their powers determined by the legislature; even though the state's policy in regard to its municipal agents may be unwise or unjust it cannot be made the basis of action by the judiciary: *Commonwealth v. Moir*, 199 Pa. 534, 541, 542, 49 A. 351, 352. The Commonwealth itself is represented on the Commission, apart from the President Judge of the Court of Common Pleas of the county, by three of its officials or their nominees, and if it does not choose to have its agent, the municipality, also represented, the latter has no independent right in that regard which it may assert.

The judgment of the Court of Common Pleas of Lackawanna County entered in accordance with the report and order of the State Mining Commission is affirmed; costs to be paid by the City of Scranton.

[3] It has been held, however, that a municipality *is* entitled to a hearing by the tribunal which is to enter a judgment or award against it: *Nelson v. Garland*, 123 Pa. Superior Ct. 257, 264-267, 187 A. 316, 319, 320.