## National Gypsum Co. v. Commonwealth

*John R. Miller* of *Miller, Kistler & Campbell* and *Arthur E. Newbold, 3rd,* of *Dechert, Price & Rhoads,* for condemnee.

*Joseph E. Favuzza* and *Robert H. Raymond, Jr.,* for condemnor.

CAMPBELL, P. J., January 7, 1972.—The world famous "Bellefonte Ledge" of high quality limestone runs in a generally northeastwardly to southwestwardly direction through Little Nittany Valley in Centre County. The right-of-way for Interstate 80 slants across the ledge near Curtin Gap east of Bellefonte. The date of the condemnation was July 1, 1964. A board of view awarded National Gypsum Company, hereinafter called "National," damages in the amount of $450,000. The board, in its award, made 34 specific findings of fact. Commonwealth, pursuant to article V, sec. 516 [4], of the Eminent Domain Code of June 22, 1964 (Spec. Sess.), P. L. 84, 26 PS § 1-516 [4], in addition to excepting to the amount of the award, filed objections to the findings of fact. Since these exceptions raise specific questions of law, basic to the inquiry, we are obliged to pass upon them prior to the jury's determination of just compensation. A brief resume of the basic facts is as follows:

The "Bellefonte Ledge" extends from I-80 in a southwestwardly direction underneath the Simco and Wian tracts, and to the northeast it extends in the following order underneath the Grove, Gettig, Ivicic, Lucas and Jacob tracts. National is the owner of the limestone and mineral rights underneath all of said tracts with the exception of the Grove tract which is owned by Warner Company, a competitor of National. The Grove tract lies immediately northeast of I-80 and between the Wian and Gettig tracts. National is the owner in fee of 43 acres of the Wian tract which it purchased with the intention of constructing a processing plant thereon. The surface of all of the remaining tracts is owned by others who are not parties to this proceeding.

The right-of-way of I-80 in crossing over the "Bellefonte Ledge" occupies the surface above the ledge for

a lateral distance of approximately 2,000 feet of which 1,300 feet is owned by National.

Along with the limestone and mineral rights owned by National, they acquired certain surface rights. Although not the same in every case, they generally permit National to erect ventilation shafts, to dispose of underground water over the surface, to run power lines over the surface and the right of ingress including the building of roads over the surface. National, however, does not have the right to open quarry, and their ownership in the limestone begins at least 75 or 100 feet below the surface and extends downward without limitation.

By way of summary, this condemnation, therefore, pertains to three different areas:

1. Damages resulting from the condemnation of 13.8 acres of the 47 acres owned by National in fee.

2. Damages resulting from the condemnation of 13.3 acres of the surface of what is known as the Gettig tract in which National had the surface rights which could be exercised in removing the limestone beneath.

3. Possible damages sustained by National to its mineral rights on both contiguous and noncontiguous tracts not beneath the condemned right-of-way on the basis of proof of unity of use.

Notwithstanding Commonwealth's exceptions to the 34 specific findings of fact, we believe they involve two legal questions as follows:

1. May an owner of the surface and minerals in one tract of land affected by a condemnation for highway purposes join in the same action a claim for damages to its mineral interests in contiguous and noncontiguous tracts where the surface is owned by others?

2. When the Commonwealth condemns an easement for highway purposes, does such condemnation

include the taking of all minerals and mineral rights underlying the surface of the ground?

We hold under the facts and circumstances of this case that National may join all claims. It is obvious that National has the fee and certain proprietary interests in the Wian tract. It likewise has certain rights both to minerals and in the surface of the Gettig tract. In addition, it owns the limestone and mineral rights under four other tracts which are not beneath the condemned right-of-way. Between the Wian and Gettig tracts is the property of Grove in which National has no rights whatsoever. For some unknown reason, Commonwealth settled with Gettig and Wian without ever notifying National or recognizing it as having any interest in these tracts. National is, therefore, the *only* claimant with which the Commonwealth has not settled. Under these circumstances, we believe that section 605 and section 612, 26 PS §1-605 and §1-612, are applicable upon proper proof of unity of use. We also hold that section 507 [a], 26 PS §1-507(a) is not applicable and does not govern this case. We agree wholeheartedly with the requirement, intent and purpose of section 507. We recognize also that the condemnation proceeding has now become a proceeding in rem and applies to the area as defined by the fee of the surface. In this case, however, there are no issues to be resolved in any particular tract except with National. This is true with both the Wian and Gettig tracts. For this reason, we believe that the cases of Porter v. Commonwealth, 419 Pa. 596 (1966), and Commonwealth Dept. of Trans. v. Haydu et al., 1 Com. Ct. 561 (1971) are inapposite and are not controlling.

We turn now to the final point which involves the effect of a condemnation for highway purposes on the

minerals and mineral rights underlying the surface of the ground.

The Commonwealth derives its power of condemnation for limited access highways such as Interstate 80 from the Limited Access Highways Act of 1945, section 8, as amended, 36 PS §2391.8, which reads as follows:

"For the purpose of constructing limiting access highways . . . the Secretary of Highways is hereby empowered to take property and pay damages therefor as herein provided. In townships such property shall be taken and damages paid therefor in the same manner as now or hereafter provided by law for the relocation or widening of State highways in townships . . ."

Since this property is located in Spring Township, section 670-210 of the State Highway Law of June 1, 1945, P. L. 1242, as amended, 36 PS §670-210, provides, inter alia, as follows:

". . . The approval of such plan or plans by the Governor shall be considered to be the condemnation of an easement for highway purposes from all property within the lines marked as required for right of way . . ."

We hold that the Commonwealth is authorized only to condemn an easement for highway purposes and has no authority to condemn more than is needed for such highway purposes: Cavalier Appeal, 408 Pa. 295 (1962); Snitzer on Pa. Eminent Domain, §402 [b]-6.2.

The condemnation for an easement for highway purposes would appear to include surface support. See Union Collieries Appeal, 345 Pa. 531 (1942); Payne Appeal, 350 Pa. 22 (1944).

Although a factual matter, the depth required for surface support could be established, especially if

it exceeded the 75 or 100 feet which National does not own and is not permitted to remove.

The board of view made the following succinct finding and observation:

"The 'take' was for the purpose of a highway easement, but condemnor did not, and despite suggestions recommending such by the Board of View, has not defined the extent of the 'highway easement,' either by filing an amended Declaration of Taking or by the offering of expert testimony which would define, for the benefit of the Board of View, what rights, duties and privileges remain in the condemnee after the taking."

This, we believe, should have been done. The responsibility for determining exactly what the condemnation covers or includes should be placed squarely on the shoulders of the condemnor. This must be determined before just compensation can be arrived at. Otherwise, the condemnee enjoys either a windfall or suffers a detriment. We shall afford Commonwealth the opportunity and suggest the following action:

1. That they file an amended declaration specifically describing the extent of their highway easement as it relates to blasting, surface support, ventilation shafts, the disposing of underground water over the surface, the construction of power lines, the right of ingress, building of roads, tunneling under the highway, the necessity of leaving support pillars and such other matters that would affect National's proprietary interests.

2. In lieu of the above-amended declaration of taking, we believe it is the obligation of the Commonwealth to present by expert testimony sufficient evidence to define what rights, duties and privileges remain in the condemnee after taking.

It would appear that the proper elements of damage in this case would be as follows:

1. The damages to the 47-acre tract of land which National owned in fee by reason of the condemnation of the 13.8-acre tract which divides National's property. In this connection, the board should consider all of the amenities of this tract which created its value.

2. Secondly, the damages to the limestone and mineral rights, including surface rights on the 27.33 acres of the Wian tract and the surface rights on the 13.3 acres of the Gettig tract, which were directly affected by, and included in, the condemnation.

3. Such unity of use loss as it affects the limestone and mineral rights and surface rights in the Simco, Ivicic, Lucas and Jacob tracts in which there was no direct take of any minerals or direct interference with mining and surface rights.

In the board's reconsideration, we believe it should give due weight to the fact that the highway condemnation does not physically divide National's underground limestone rights. We, likewise, believe that National's exercise of an option to purchase the 47-acre tract in fee to be used as a plant site five years after knowledge of the condemnation seriously affects its position that the entire property of National now has only salvage value.

Let it be understood that the court has no intention of interfering with the free and unhampered judgment of the board of view. It is only asking for a reconsideration on the basis of an amended declaration or reliable expert testimony defining the attributes of a highway easement and in view of the suggestions contained in this opinion.

And now, January 7, 1972, we, therefore, refer the matter back to the board of view for the taking of such additional testimony as may be offered and its consideration in the light of the holdings of this opinion.